NOTE.—Reported in 116 N. E. 420.

---

INDIANA HARBOR BELT RAILROAD COMPANY *v.* PUBLIC SERVICE COMMISSION OF INDIANA.

[No. 23,446. Filed November 26, 1918.]

1. APPEAL.—*Assignments of Error.—Waiver.—Briefs.*—Under the assignment of error that the court erred in overruling the motion for new trial, all causes assigned for new trial which are not discussed in the appellant's brief are waived. p. 662.

2. CARRIERS.—*Regulation.—Charges.—Power of Public Service Commission.*—Under §5540 Burns 1914, Acts 1911 p. 545, §5533 Burns 1914, Acts 1913 p. 725, the Public Service Commission has authority, on proper showing, to establish through joint rates between stations within the state located on connecting railroad lines and, upon the failure of the carriers to agree upon a division thereof, may fix a pro rata division of the rates between such carriers. p. 664.

3. CARRIERS.—*Regulation of Rates.—Joint Rates.—Sufficiency of Showing.*—To justify the Public ·Service Commission in establishing joint rates over the lines of connecting carriers it must appear that the lines are common carriers having physical connections, that there is an existing public necessity for through routes and joint rates between stations within the state on such connecting lines, and that the reasonable accom-

Indiana Harbor Belt R. Co. v. Public Service Com.—187 Ind. 660.

modation and convenience of shippers and receivers of freight necessitates the establishment of joint rates. pp. 664, 668.

4. CARRIERS.—*Regulation of Rates.—Joint Rates.—Public Necessity.—Findings.*—Before the trial court is warranted in confirming an order of the Public Service Commission establishing through joint rates between connecting carriers, it must find as a fact that the reasonable convenience and requirements of shippers is such as to give rise to a public necessity for such order. p. 665.

5. APPEAL.—*Review.—Scope.—Evidence.—Sufficiency.*—In determining whether there is sufficient evidence to support the judgment, the Supreme Court will not pass on the credibility of witnesses nor weigh conflicting evidence, but will ascertain whether there is some evidence of a substantial nature to sustain every fact necessary to uphold the judgment. p. 666.

6. CARRIERS. — *Regulation of Rates. — Power of Public Service Commission.*—The power granted to the Public Service Commission to enforce compulsory joint rates as to connecting carriers was not intended to be exercised for the purpose of aiding one carrier as against others in its competition for business. p. 667.

From Porter Superior Court; *Harry L. Crumpacker,* Judge.

Action by the Indiana Harbor Belt Railroad Company against the Public Service Commission and another. From a judgment for the defendants, the plaintiffs appeal. *Reversed.*

*John A. Gavit, Glennon, Cary & Walker* and *S. C. Murray,* for appellant.

*Ele Stansbury,* Attorney-General, and *F. J. Lewis Meyer,* for appellees.

LAIRY, J.—This is an appeal from a judgment of the Porter Superior Court in an action brought by appellant for the purpose of annulling and setting aside an order of the Public Service Commission of Indiana made in a proceeding instituted against appellant before that body by the Chicago, Lake Shore and South Bend Railway Company, by which appellant was required to establish joint through rates between all points on its road within

662    SUPREME COURT OF INDIANA,

Indiana Harbor Belt R. Co. *v.* Public Service Com.—187 Ind. 660.

the State of Indiana and all points on the road of the Chicago, Lake Shore and South Bend Railway Company within said state, and to file such rates with the commission and put the same into effect. By the judgment of the superior court the order of the Public Service Commission was in all things confirmed.

Appellant assigns as error that the court erred in overruling its motion for a new trial. All the causes assigned for a new trial are waived by a failure to discuss in the brief except only that the decision of the court is contrary to law, and that such decision is not sustained by sufficient evidence.

The decision of the questions thus presented involves a consideration of the law as well as the facts upon which the order is based.

By §5540 Burns 1914, Acts 1911 p. 545, it is provided that the classification of freight on all railroads in this state shall be uniform, and every such carrier shall print in plain type and file with the commission schedules, which shall be open to public inspection, showing all rates, fares, and charges for transportation of passengers and property, and schedules of joint rates showing all joint rates, fares, and charges for transportation of passengers and property which it has established and which are in force at the time between all points in this state upon its line or any line controlled or operated by it, and upon its line or any one or more connecting lines.

Section 5533 Burns 1914, Acts 1913 p. 725, among other provisions, contains the following: "(b) The said commission shall have power and it shall be its duty, as hereinafter provided, upon failure of the railroad companies so to do, to fix and establish for all and any connecting lines of railroads in this state reasonable joint rates of freight, transfer and switching charges for the various classes of freight and cars that

may pass over two or more lines of such railroad. (c) If any two or more connecting railroad companies shall fail to agree upon a fair and just division of the charges arising from the transportation of freights, passengers or cars over their lines, the commission shall, as hereinafter provided, fix the pro rata part of such charges to be received by each of said connecting carriers. * * * (h) The provisions of this section shall be construed to mean that the power of said commission extends to any case where any person, firm, corporation or association, or any mercantile, agricultural or manufacturing society, or any body politic or municipal organization, complain of anything done, or omitted to be done by any common carrier subject to the provisions of this act, and shall apply to said commission by petition, which shall briefly state the facts. * * * If such carrier shall not satisfy the complaint within the time specified or there shall appear to be any reasonable ground for investigating said complaint it shall be the duty of the commission to investigate the matters complained of, and no complaint shall at any time be dismissed because of the absence of direct damage to the complainant. And said commission shall have power after such investigation to make such corrections, alterations, changes or new rules or regulations or rates as may be necessary to prevent injustice or discrimination to the party complaining or to any other person, firm or corporation. * * * (n) All railroad companies doing business in this state shall, upon the demand of any person or persons interested, establish reasonable joint rates for the transportation of freight between points upon their respective lines within this state, and shall receive and transport freight and cars over such route or routes as the shipper may direct."

Under these statutes the Public Service Commission is given authority to entertain a petition praying that

through routes and joint rates be established be-
2. tween stations located within the State of Indi-
ana on one line of railroad to stations within the
same state located on another line of railroad, and on a
proper showing being made it has power to order such
rates to be established. If, after such rates are fixed,
the companies are unable to agree upon a division of
the rates fixed, the commission has power after a hear-
ing to fix the pro rata part of such charges to be re-
ceived by each of said connecting carriers.

To justify the establishment of joint rates over the
lines of two or more connecting carriers it must be
made to appear that the lines affected by the
3. rate are each common carriers having physical
connections, and that there is an existing public
necessity for through routes and joint rates between
stations within the state on the lines of the connecting
carriers. It is not necessary that an absolute and indis-
pensable necessity should be shown, but it must at least
appear that the reasonable accommodation and conveni-
ence of shippers and receivers of freight necessitates
the establishment of such joint rates. *Blakely, etc.,
R. Co.* v. *Atlantic, etc., R. Co.* (1913), 26 I. C. C. 344,
350; *Oregon Railroad, etc., Co.* v. *Fairchild* (1911), 224
U. S. 510, 528, 32 Sup. Ct. 535, 56 L. Ed. 863; *New York
Dock Railway* v. *Baltimore, etc., R. Co.* (1915), 32 I. C.
C. 568, 573; *Chicago, etc., R. Co.* v. *Chicago, etc., R. Co.*
(1915), 33 I. C. C. 573, 576.

It may not be out of place here to remark that §15
of the Interstate Commerce Act (34 Stat. at L. 590,
§8583 U. S. Comp. Stat. 1916), prior to its amend-
ment in 1910, granted power to the commission to
compel the establishment of through routes and joint
rates between places only, "provided no reasonable
through rates existed." In 1910 this section was
so amended as to omit the provision just quoted.

Under the statute as it stood prior to this amendment, the existence of a reasonable and satisfactory through rate between two given points precluded the commission from establishing other through routes and joint rates between such places. The amendment had the effect to remove this restriction on the power of the commission and to leave it free, under proper circumstances, to establish joint through rates between places which are already served by through routes already in existence. It has been consistently held, however, that additional through routes and joint rates will not be ordered by the commission unless it is made to appear that the shippers and receivers of freight are not adequately or efficiently served or that such rates when established will inure to the benefit and convenience of the public. *Cincinnati, etc., Traction Co. v. Baltimore, etc., R. Co.* (1911), 20 I. C. C. 486; *Blakely, etc., R. Co.* v. *Atlantic, etc., R. Co., supra.*

It is not controverted in this case that the two companies affected are each engaged in operating lines of railroad as common carriers, and that there exists a physical connection between such lines; but appellant asserts that the evidence shows no such necessity or reasonable requirement on the part of shippers as calls for the fixing of joint rates between any point within this state located on its line and any other point within the state located on the line operated by the Chicago, Lake Shore and South Bend Railway Company.

In confirming the order made by the Public Service Commission the trial court must have reached its conclusion in one of two ways. Either it must have 4. found as a fact from the evidence that the reasonable convenience and requirements of shippers was such as to give rise to a public necessity for the order establishing such joint rates, or it must have concluded as a matter of law that such a finding was not

666    SUPREME COURT OF INDIANA,

Indiana Harbor Belt R. Co. v. Public Service Com.—187 Ind. 660.

an essential prerequisite to such order. If the decision rests upon the latter conclusion, it is contrary to law. *Blakely, etc., R. Co. v. Atlantic, etc., R. Co., supra; Oregon Railroad, etc., Co. v. Fairchild, supra; New York Dock Ry. v. Baltimore, etc., R. Co., supra.*

On the other hand, if the decision rests upon the finding of fact that such a public necessity was shown as justified the order, the assignment of errors requires this court to examine the evidence to ascertain whether there is any substantial evidence upon which a finding of such public necessity could be based. In the discharge of this duty the court is controlled by the rules which generally govern it in the consideration of evidence on appeal. It will not pass on the credibility of witnesses nor weigh conflicting evidence. If there is some evidence of a substantial nature to sustain every fact necessary to sustain the decision of the trial court, this court will not disturb it.

This brings the court to a consideration of the evidence. The evidence shows that 615 cars passed over the interchange tracks connecting the line of appellant with the lines of the Chicago, Lake Shore and South Bend Railway, but it fails to show that any of those cars were billed from one station in the state for delivery at another station within the state. On the contrary, the evidence shows that all of these cars were employed in the transportation of freight between points in Illinois and points in Indiana. Evidence of the transportation of cars in interstate commerce has no tendency to show a public necessity for through routes and joint rates between stations located within this state on the lines of the companies affected by the order. There is no evidence that any shipper ever tendered any freight for transportation from one station to another both within this state to be routed over the two lines affected by the order, or that there was any demand or require-

ment for such shipments. There is evidence that the lines of the Chicago, Lake Shore and South Bend Railway passes through and reaches certain cities and towns where freight is available for shipment, and it is argued that the order establishing ·joint rates between such cities and towns and the stations on the lines operated by appellant would afford a means of transportation over such joint routes which would be extensively used by shippers; but this evidence and the argument based thereon is wholly speculative. It is also shown that appellant has entered into agreements for joint rates with certain steam railroads which have been put into effect, and that the rates thus fixed between points on appellant's lines and points reached by the Chicago, Lake Shore and South Bend Railway are less than the combined rates, as fixed, over the lines of appellant and those of the Chicago, Lake Shore and South Bend Railway between the same places. From this it is argued that the company last named is unable to compete with roads having such joint rates in shipments between stations on its road with those on the lines of appellant, but it is not shown that the service furnished is inadequate to meet the needs of the public, or that the shippers and receivers of freight on either of the lines affected would be better served by the through routes fixed by the order, or that the same would inure to their benefit or convenience. It must be borne in mind that the purpose of the law, in providing for the establishment of through routes and joint rates, was to secure reasonable facilities to the public and to prevent unreasonable and unjust rates. The power granted to

6. the commission to enforce compulsory joint rates as to connecting carriers was not intended to be exercised for the purpose of aiding one carrier as against others in its competition for business. *Blakely, etc., R. Co.* v. *Atlantic, etc., R. Co., supra; Cincinnati,*

*etc., Traction Co.* v. *Baltimore, etc., R. Co., supra;* There is no evidence in the record to show that

3. any public necessity existed for the joint rates provided for in the order, or that any one would be benefited by such rates other than the Chicago, Lake Shore and South Bend Railway Company. It is accordingly held that the decision of the trial court is not sustained by the evidence.

The judgment is reversed, with directions to sustain appellant's motion for a new trial, and for further proceedings not inconsistent with this opinion.

NOTE.—Reported in 121 N. E. 540. Power of legislature to delegate to the Public Service Commission authority to fix rates, 32 L. R. A. (N. S.) 649. See under (3, 4, 7) 10 C. J. 429.