PUBLIC SERVICE COMMISSION OF INDIANA *v.* CLEVE-
LAND, CINCINNATI, CHICAGO AND ST. LOUIS
RAILWAY COMPANY.

[No. 23,423.   Filed December 11, 1918.   Rehearing denied
April 3, 1919.]

1.   PUBLIC SERVICE COMMISSION.—*Findings of Commission.—Ef-
fect on Appeal.*—Under §6 of the Public Service Commission
Act (§5536 Burns 1914, Acts 1913 p. 820), the court to which
an appeal is taken from the commission does not sit as a court
of review, but the issues are tried *de novo;* hence the court is
not bound by the findings of the commission, but should deter-
mine the case from the evidence adduced.   pp. 200, 202.

2.   PUBLIC SERVICE COMMISSION.—*Powers of.—Administrative.*—
The functions vested by the legislature in the Public Service
Commission are administrative in their nature and not judi-
cial.   p. 201.

3.   APPEAL.—*Review.—Weight of Evidence.*—On appeal from a

198 SUPREME COURT OF INDIANA,

Public Service Commission v. Cleveland, etc.; R. Co.—188 Ind. 197.

judgment of the trial court annulling an order of the Public Service Commission, the Supreme Court will not weigh the evidence. p. 203.

4. CARRIERS.—*Through Routes and Joint Rates.*—*Rights of Public.*—*Evidence.*—Where the evidence tended to show that a private company would be the principal, if not the sole, beneficiary of joint rates, between a short freight line and a through railroad, which were sought in a petition before the Public Service Commission, the trial court was justified, on appeal from an order granting joint rates, in annulling the order of the commission on the grounds that it was not required for the benefit of the shippers and receivers of freight. p. 203.

From Marion Circuit Court (27,522); *Louis B. Ewbank,* Judge.

Petition by the Syracuse and Milford Railway Company, and intervening petition by the Sandusky Cement Company, before the Public Service Commission, to require the Cleveland, Cincinnati, Chicago and St. Louis Railway Company to maintain through routes and joint rates with the petitioner. The commission made an order for joint rates, and from a judgment of the trial court annulling the order, the commission appeals. *Affirmed.*

*Ele Stansbury,* Attorney-General, *Hoyt, Dustin, Kelley, McKeehan & Andrews,* and *Bingham & Bingham,* for appellant.

*Frank L. Littleton, Forest Chenoweth* and *Charles P. Stewart,* for appellee.

LAIRY, J.—On May 3, 1916, the Syracuse and Milford Railway Company filed a petition asking for an order requiring the Cleveland, Cincinnati, Chicago and St. Louis Railway Company to establish and maintain, in connection with the petitioner, through routes and joint rates between Syracuse, Indiana, and all points on the line of the last-named company within the State of Indiana. Thereafter the Sandusky Cement Company, a manufacturer of cement at Syracuse, filed an inter-

NOVEMBER TERM, 1918.    199

Public Service Commission v. Cleveland, etc., R. Co.—188 Ind. 197.

vening petition alleging, among other things, that its plant was located on the line of the petitioner, and was served by it, and also by the Baltimore and Ohio Railroad Company; that it shipped large tonnage of its product to points on the line of the Cleveland, Cincinnati, Chicago and St. Louis Railway and was desirous of making use of the facilities for shipment over the lines of the petitioner which would be afforded by the establishment of the through routes and joint rates prayed for in the petition; that the service furnished by the Baltimore and Ohio Railroad Company is inadequate, and that the intervenor cannot ship by way of the lines of the petitioner and those of the Cleveland, Cincinnati, Chicago and St. Louis Railway, in the absence of joint rates, over such lines, for the reason that it is required to pay the cost of transportation over the lines of the petitioner in addition to the rates over the lines of the last-named company from the junction point to the point of destination, which are the same as the joint rate over the Baltimore and Ohio Railroad Company and the Cleveland, Cincinnati, Chicago and St. Louis Railway Company, from the initial point of shipment to the same destination.

After a hearing on the petition and intervening petition, the Public Service Commission made and entered an order classifying the Syracuse and Milford Railway Company as a common carrier possessing the right to have joint rates established with the Cleveland, Cincinnati, Chicago and St. Louis Railway Company, and to have a fair division of rates, and the two companies named were directed to establish, publish and put into effect such joint rates within thirty days from the date of the order.

Appellee filed this action in the Marion Circuit Court asking to have said order annulled and set aside. The trial in the circuit court resulted in a finding and judg-

ment in favor of the plaintiff by which the order of the commission was adjudged to be null and void. The Public Service Commission appealed from this judgment, assigning as error that the trial court erred in overruling its motion for a new trial. The reasons assigned in the motion for a new trial were that the decision of the trial court was not sustained by sufficient evidence, and that such decision was contrary to law.

In support of the reasons thus assigned, it is asserted by appellant that the findings of fact made by the Public Service Commission, upon which an

1.  order is based, are conclusive on the court if there is substantial evidence to sustain such findings. It seeks to invoke the same rule in favor of findings of the commission which obtains in courts of appeal and error in favor of the findings of trial courts. This contention cannot be sustained, as it is out of harmony with the entire spirit of the act under which such proceedings are conducted. By §6 of the Railroad Commission Act (Acts 1913 p. 820, §5536 Burns 1914), it is provided that any carrier or other party, dissatisfied with any final order made by the commission, may, after its ruling on petition for rehearing and within twenty days from the date of such ruling, begin an action against the commission in any court of competent jurisdiction in any county of this state into or through which any carrier operates to suspend or set aside any such order. It is evident that the court in which such an action is brought does not sit as a court of review to correct errors of the commission; but, on the contrary, it is clear that the court in such action shall hear the case *de novo* and determine it from the evidence adduced at the trial. The same section of the act provides that, in all actions in the courts of this state authorized by this act, the rules of evidence shall be the same as in the trial of civil cases as now provided by law, excepting

NOVEMBER TERM, 1918.    201

Public Service Commission *v.* Cleveland, etc., R. Co.—188 Ind. 197.

as otherwise provided in this act.    Under similar statutes, it has been decided that the court in an action brought to set aside an order of the commission was not bound by the findings of the commission, but that it was the duty of the court to determine the case from a consideration of the evidence adduced.    *Interstate Com. Comm.* v. *Louisville, etc., R. Co.* (1912), 227 U. S. 88, 33 Sup. Ct. 185, 57 L. Ed. 431; *Pittsburgh, etc., R. Co.* v. *Railroad Commission* (1908), 171 Ind. 189, 86 N. E. 328; *Oregon R. & N. Co.* v. *Fairchild* (1911), 224 U. S. 510, 32 Sup. Ct. 539, 56 L. Ed. 863.

In the case of *Oregon R. & N. Co.* v. *Fairchild, supra,* 526, the court said:    "The act further provided that after the administrative body had acted, the carrier should have the right to test the lawfulness and reasonableness of the regulation in the Superior Court, where every error in rejecting or excluding evidence, or otherwise, could be corrected.    On that trial the court was not bound by the finding of fact, but, like the Commission, it was obliged to weigh and consider the testimony and to give full effect to what was established by the evidence, since it acted judicially, 'under an imperative obligation, with a sense of official responsibility for impartial and right decision, which is imputed to the discharge of official duties.'"

It has been frequently decided that the functions vested by the legislature in commissions, such as our Public Service Commission, are not judicial in 2.    their nature, but that they are administrative in character.    *Southern Indiana R. Co.* v. *Railroad Comm., etc.* (1908), 172 Ind. 113, 87 N. E. 966; *Chicago, etc., R. Co.* v. *Railroad Comm., etc.* (1911), 175 Ind. 630, 95 N. E. 364; *Chicago, etc., R. Co.* v. *Minnesota* (1889), 134 U. S. 418, 10 Sup. Ct. 462, 33 L. Ed. 970.    This being true, it follows that the proceedings before such body are not judicial proceedings, and that their orders

are not judgments, but are administrative orders. Under the statute a party aggrieved by an order of the commission may file an action in court to have the order annulled and set aside. This affords him his first opportunity to have the facts on which the order rests judicially determined. In reaching a judicial determination as to the reasonableness or justness of an order the court could not be bound and controlled by the findings of an administrative body as to the facts on which such order was based. In the case of Chicago, etc., R. Co. v. Minnesota, supra, it was held that any order reducing the rates of a railroad company deprived such company of a part of the proceeds of its property, and thus in effect constituted a deprivation of property within the meaning of the fourteenth amendment to the federal Constitution, which inhibits a state from depriving any citizen of property without due process of law. In that case it was held that the questions involved were of a judicial nature, and that the parties interested had a right to a judicial hearing and determination of such questions. It was further decided that a determination by the commission was not of a judicial nature and did not afford due process of law, and that if the order of the commission was held to be conclusive on the courts, and if no provision was made for a judicial hearing and determination of the facts involved, due process of law was denied and the law invalid for that reason.

The fact that there may have been some evidence before the commission to sustain every material fact upon which the order was based could not prevent the

1. court from making such findings as seemed right and just to it after considering and weighing the evidence adduced at the trial; and a decision by the court on a question of fact contrary to that arrived at by the commission would not be contrary to law, even

though there may have been substantial evidence to support the finding of the commission.

The question as to the sufficiency of the evidence to sustain the decision of the trial court still remains for consideration. In passing on this question, this court cannot weigh evidence, but must sustain the decision if there is any substantial evidence on which it can rest. *Indiana Harbor Belt R. Co.* v. *Public Service Comm.* (1918), 187 Ind. 660, 121 N. E. 540.

There can be no doubt that the evidence is sufficient to justify a finding by the trial court that through routes and joint rates provided for in the order were not necessary in order to serve the needs and to accommodate the reasonable requirements of the shippers and receivers of freight. *Indiana Harbor Belt R. Co.* v. *Public Service Comm., supra.* The evidence shows that the Syracuse and Milford Railway Company has a capital stock of $100,000, and that it owns about seven miles of track extending from the town of Syracuse to Deeters. It is further shown that it is equipped with three 20 to 35-ton locomotives and that it has seventy or eighty steel cars for handling marl and clay. They are of six yards capacity for this purpose and ten or twelve tons capacity for other purposes. The company had no standard equipment and the cars described would not pass in general interchange on steam railroads. The road was not equipped for passenger traffic. The principal industry served by the railway company is the Sandusky Cement Company located at Syracuse, which company originally constructed the railway for the purpose of enabling it to transport material to its cement works. The cement company owns all of the capital stock of the railway company, and the president and the treasurer of the cement company are respectively the president and the treasurer of the railway company.

The evidence shows that the cement company would be the principal, if not the sole, beneficiary of the joint rates which were sought.

There is other evidence in the record which the trial court may have properly considered as bearing on the question, but without further extending this opinion the court concludes that the evidence was sufficient to justify a finding that the joint rates established by the order were not required for the benefit, accommodation and convenience of the shippers and receivers of freight, but were sought for the private benefit of the Sandusky Cement Company. The decision of the trial court is sustained by the evidence, and is not contrary to law.

Judgment affirmed.

NOTE.—Reported in 121 N. E. 116. Regulation of rates by state, 62 Am. St. 289-304.