NOVEMBER TERM, 1920.　　　253

Valparaiso Lighting Co. *v.* Public Service Comm.—190 Ind. 253.

## VALPARAISO LIGHTING COMPANY *v.* PUBLIC SERVICE COMMISSION OF INDIANA.

[No. 23,511. Filed December 17, 1920. Rehearing denied March 10, 1921.]

1. ELECTRICITY.—*Electric Power Company.—Surrender of Franchise.—Effect.—Statutes.*—An electric power company surrendering its franchise under §§100, 102 of the Public Service Law (Acts 1913 p. 167, §10052a *et seq.* Burns 1914), and thereafter operating under an indeterminate permit, does not thereby part with any other of its property, such as its property rights in a contract of another company to furnish it current. p. 263.

2. ELECTRICITY.—*Electric Power Company.— Fixing Rates.— Property Subject to Appraisement.—Contract for Current.—* In the appraisement of an electric power company's property for rate-making purposes, it was entitled to have a valuation fixed upon its valuable long-time contract for current, and to have that valuation considered in fixing the rate which the company would be permitted to charge. p. 264.

3. ELECTRICITY.—*Electric Power Company.—Action to Set Aside Rates.—Right to Special Finding.—Statute.*—In view of §78, Public Service Law (Acts 1913 p. 167, §10052a *et seq.* Burns 1914), relating to the practice on appeals to the courts from orders of the Public Service Commission and providing that such appeals shall be tried and determined as other civil actions, an electric power company appealing from an order of the commission fixing rates for it was entitled, upon proper request, to a special finding of facts. p. 266.

4. ELECTRICITY.—*Electric Power Company.—Order Fixing Rates. —Acceptance of Benefits.—Estoppel.*—Where patrons of a company furnishing electrical current and gas to the general public file a petition with the Public Service Commission for a reduction in the rates for electricity, and the company files a petition for an increase of rates for both of its products, though the commission consolidates the causes for the purposes of hearing, and in form makes but one order, which grants the patron's petition and allows the company's petition to the extent of adding a limited and temporary surcharge on gas bills, the company is not estopped by accepting the benefit of the order as regards the surcharge on gas to appeal from the order for the purpose of having the rate for electricity set aside. pp. 266, 267.

5. PUBLIC SERVICE COMMISSION.—*Orders.—Nature.*—An order of the Public Service Commission fixing rates is not a judgment, but an administrative order. p. 267.

From Laporte Circuit Court; *James F. Gallaher,* Judge.

Action by the Valparaiso Lighting Company against the Public Service Commission of Indiana. From the judgment rendered, the plaintiff appeals. *Reversed.*

*Edgar D. Crumpacker, Grant Crumpacker* and *Owen L. Crumpacker,* for appellant.

*Ele Stansbury* and *U. S. Lesh,* Attorneys-General, *Perry L. Sisson* and *Edward M. White,* for appellee.

WILLOUGHBY, C. J.—This action was begun in the Porter Superior Court by the appellant as plaintiff against the appellee as defendant, to vacate, set aside and enjoin the enforcement of an order of appellee, the Public Service Commission of Indiana, fixing and establishing rates which appellant might charge consumers of electrical current, also fixing a valuation upon the appellant's electrical system in the city of Valparaiso. The case reached the Laporte Circuit Court on a change of venue. The judgment was rendered in favor of appellee, and this appeal is prosecuted from that judgment.

The appellant filed its complaint in the Porter Superior Court to set aside and vacate the order of the Public Service Commission. The complaint reviews the proceedings and order of the commission establishing rates and fixing a valuation upon appellant's plant and distributing system, and alleges that the order of the commission fixing rates and establishing such valuation is void and unreasonable for the reasons stated therein.

The appellee filed an answer to the complaint consisting of a general denial to each and every allegation thereof. After the cause had been transferred to the Laporte Circuit Court, the appellee filed an additional or supplemental answer. This supplemental answer sets up in substance that the order of the commission

was made pursuant to petition filed by customers of appellant asking for a reduction in rates for electric lighting, and that a petition asking for an increase in rates for both gas and electricity was filed by the appellant. The petitions were tried together, and the commission entered an order fixing a valuation upon appellant's electrical property and reducing rates in connection therewith, and as a part of the same order appellant was permitted to add a surcharge of ten per cent. for gas, and has been collecting said increased rates from its various customers, and that thereby it was estopped from denying the validity of the order or any portion thereof. To this supplementary answer the plaintiff filed a reply of general denial. The cause was submitted to the court for trial without the intervention of a jury. The appellant requested the court to make a special finding of facts and conclusions of law, which request was overruled by the court. The finding of the court was a general one and was for the appellee, and that the appellant take nothing. The judgment of the court followed the finding and affirmed the order of the commission.

Appellant filed a motion for a new trial, which was overruled by the court, and it is to review these various rulings of the court that this appeal is prosecuted.

It appears from the record that the city of Valparaiso is now and has been for many years a municipal corporation and is what is known and designated under the statutes of the state as a city of the fifth class. The appellant, Valparaiso Lighting Company, is a corporation duly organized and existing under and by virtue of the laws of the State of Indiana, and was incorporated some time during the year of 1905. About the time of its incorporation, or shortly thereafter, it acquired by purchase the electric lighting and gas systems in the city of Valparaiso, and has since been operating said

256    SUPREME COURT OF INDIANA,

Valparaiso Lighting Co. *v.* Public Service Comm.—190 Ind. 253.

gas and electric systems.    Up to November, 1913, appellant operated in said city under franchises theretofore granted to it by the common council of the city, and on the last-named date it surrendered to the Public Service Commission all of its franchises under which it had been previously operating and thereafter operated and is now operating under what is termed in the Public Service Law an indeterminate permit.

On October 6, 1915, ten persons filed a petition with the commission, asking that the rates for electricity for residence lighting in the city of Valparaiso be reduced, and averring that appellant was charging ten cents per kilowatt hour for electric current for lighting purposes and that such charge was unreasonable, and also that it charged $1 per month for "meter rent" or "readiness to serve" charge; that the last-named charge was made for no service rendered, and no electricity was furnished for said charge; that said charge was unreasonable and unwarranted.

The petition was based solely on these two grounds: First, that the charge for residence lighting was too high; and second, that the charge for meter rental, or so-called "readiness to serve," was unreasonable and was for no service that was in fact performed or furnished by appellant to its customers.    This petition was designated by the secretary of the commission as cause No. 1848.    Afterwards, on August 3, 1917, appellant filed a petition with the commission asking that it be permitted to add a temporary surcharge on all bills for gas and electricity of thirty per cent. of the amount thereof.    This was filed by the commission as petition No. 3312.    These petitions were heard at the same hearing.    No formal order of the commission was entered consolidating the causes and no reference thereto is made in the proceedings of the commission except in the final order or opinion of the commission.    The fact

Valparaiso Lighting Co. v. Public Service Comm.—190 Ind. 253.

of the filing of the respective petitions is there mentioned, and it is also stated that the causes had been consolidated for the purpose of a hearing, but there is nothing in the record to show the consolidation of said causes for any other purpose.

While the order of the commission is embraced in a single document, it in fact considers the gas and electrical propositions separately, and fixes a separate valuation on appellant's gas and electric plants and distributing systems and establishes a new schedule of rates to be charged by appellant for electricity consumed which amounts to a reduction of thirty to forty per cent. from the prior schedule of rates. With reference to the gas proposition the order grants appellant permission to charge temporarily a surcharge of ten per cent. on all bills for gas furnished after May 1, 1918.

The physical valuation fixed by the commission upon appellant's electric property is $75,000. The new schedule of rates established by the commission is based upon this valuation. Certain so-called abandoned property of appellant, which was appraised by the commission's engineer at $13,721, is not included in the valuation fixed by the commission upon appellant's electric property for rate-making purposes, the claim being made that such property was neither used nor useful in the service furnished by appellant. It appears from the evidence before the commission and from the opinion of the commission, that the appellant entered into a contract with the Northern Indiana Gas and Electric Company, by the terms of which the latter company furnishes electric current to appellant for use in supplying customers in the city of Valparaiso. This contract was made in 1911, and runs for ten years. After the contract was entered into appellant prac-

tically ceased to use the so-called abandoned property, which consisted of its local electrical plant and generating system.   Appellant's contract for electrical current provides for a payment therefor amounting to approximately two cents per kilowatt hour, and the decision of the commission is based largely upon the fact that this contract was very advantageous to appellant, and that by reason thereof it was fortunately situated.   The decision appropriates all of the benefits growing out of said contract to the public and does not allow anything to appellant on account thereof.   Neither is any valuation fixed nor allowed thereon for the purpose of rate making, and it further appears that the so-called *abandoned property* was abandoned to enable appellant to take advantage of the terms and provisions of said contract.   In other words, after entering into said contract, it ceased to use its generating plant and system which, as stated, was appraised at the sum of $13,721, and thereafter it obtained its electric current by a transmission line from the city of Michigan City, so that for the purpose of rate making no valuation was fixed on the alleged abandoned property, neither was any valuation fixed on the favorable contract which appellant had with the Northern Indiana Gas and Electric Company. Appellant's contention is that the contract that it has with the Northern Indiana Gas and Electric Company was entered into in September, 1911, before the enactment of the Public Service Law, and that the rights conferred upon appellant by virtue of that contract were valuable property rights which belonged to it, and that such contract was an asset to appellant, and that when thereafter, to wit, November 20, 1913, it surrendered its franchise and operated thereafter under an indeterminate permit, it did not surrender any of its property rights, including the contract with the Northern Indiana Gas and Electric Company, and that appellant

was entitled to have a valuation fixed on said contract or its rights thereunder for rate-making purposes and rates established accordingly.

The trial court also refused to admit evidence showing the value of the contract that appellant had with the Northern Indiana Gas and Electric Company, and in that connection what it would cost to generate electric current in the city of Valparaiso or obtain it from any source or sources other than the one from which it was obtaining it at the time the order of the commission was entered.

A valuation of both plants was made by the Public Service Commission's engineers. The gas plant was appraised by the commission's engineers as follows: Cost of reproduction, $164,200; present value, $138,137. These figures include an allowance of $9,270 for materials and supplies, but does not include anything for going value or working capital. The commission fixes the value of the gas plant of the Valparaiso Lighting Company, including working capital, at $150,000. The reproduction cost of the electric plant of the company was valued at $78,413, and its present value was fixed at $67,315, by the commission's engineers. Making allowance for working capital and intangible values, the commission finds that the value of the property of the Valparaiso Lighting Company used and useful in furnishing electric energy to the public is $75,000. The annual report of the gas department of the Valparaiso Lighting Company for the year 1917 shows that its total operating revenues were $48,217.13, and that its operating expenses, including taxes, were $39,697.71, leaving net operating revenues of $8,521.42. Its nonoperating revenues were $838.31, making a total gross income for the year of $9,353.73. The commission says: "This utility under normal conditions should be permitted to earn 2 per cent. on the present physical value of its

property, less lands, materials and supplies, as a depreciation fund, and 7 per cent. return. In addition to operating expenses and taxes under normal conditions, this utility should be permitted to earn from its gas plant the following amounts.

| | |
|---|---|
| 2% depreciation on $125,867 | $2,517.34 |
| 7% return on $150,000 | 10,500.00 |
| Total | 13,017.34 |

"It will be noted from the figures given above that it earned for the year 1917, to meet these amounts, only $9,353.73, leaving a deficit of $3,663.61. The commercial earnings of this plant for 1917 were $35,108.56. A 10 per cent. surcharge would produce sufficient additional revenue to practically meet the requirements of this company. The commission will not disturb the present gas rate structure of this utility, but will authorize it to add a surcharge of 10 per cent. to all bills for gas rendered by it from and after May 1, 1918, until the further order of the commission, not exceeding, however, a period of two years."

The commission in its order says: "The electric plant of the Valparaiso Lighting Company occupies a most fortunate position during these abnormal times. The heavy burden of high operating expenses which has fallen on most electric utilities, since the beginning of the great war, has touched lightly on this company. It has no worries over the high price of coal. It purchases its electric current at a very low rate under a contract which does not expire until 1921. The annual report filed by this company for the year 1917 shows that the operating revenues from its electric plant were $64,787.60, and that its operating expenses, including taxes, were $34,789.47. Its net operating revenues are thus shown to be $30,000.13. Its nonoperating revenues were $731.09, making its total gross income

$30,731.22, being more than 40 per cent. on the value of its property as fixed above."

The commission further finds that: "A proper rate for depreciation to be charged by said utility for its electric plant is 3 per cent. on the value of its plant less the value of lands, materials and supplies, and working capital, which value is approximately $65,000. Said company is ordered to conform its depreciation account to said rate. The company is entitled to earn under normal conditions the following sums in addition to operating expenses and taxes:

| | |
|---|---|
| 3% on $65,000 ........................ | $1,950 |
| 7% on $75,000 ........................ | 5,250 |
| Total ........................... | 7,200 |

"It will thus be seen that the excess earnings of this company for 1917 were $23,531.22. Certain abandoned property, formerly used by the electric plant, was appraised at $13,721. The company claims that this sum should be included in the value of this plant for rate making purposes, or that an allowance should be made out of earnings to amortize this sum. It should not be included in the value of this plant for rate making purposes because it is not actually used nor useful in furnishing electricity. No allowance should be made for an amortization fund to take care of this sum. This company, since the commencement of this proceeding, has collected in excess revenues a sum much more than enough to pay for this abandoned property. The public should not be forced again to pay for this abandoned property.

"It is contended by the attorneys representing the electric consumers that taxes and certain operating expenses have not been properly apportioned between the gas and electric properties; that too large a proportion of said expenses had been charged against the electric

utility. The commission will not undertake to reapportion said expenses at this time, in view of the fact that a large reduction in the electric rates must be made, and in view of the further fact that if additional expenses are added to those apportioned to the gas plant, an additional increase of the gas rates would have to be made.

"The commission finds that the electric rates of said Valparaiso Lighting Company are unjust and unreasonable and that said company should desist from enforcing said rates. It is estimated that the rates set forth below will produce the following revenue based on consumer's data furnished by this company to wit, $38,018. In addition to this, revenue derived from municipal and railroad lighting and lighting of the courthouse will amount to $5,355, making the total operating revenues per annum $43,353. The nonoperating revenue of this company for 1917, as shown by its annual report, was $731. Adding this to the above amount would make the total earning of this company $44,084, or $2,095 more than its operating expenses and 3 per cent. for depreciation and 7 per cent. return."

The commission then ordered that the Valparaiso Lighting Company file a schedule on or before May 1, 1918, putting into force and effect the following rates, tolls and charges, to wit:

"Lighting Rates.

For first 10 K.W.H. per month 8 cents per K.W.H.
For next 90 K.W.H. per month 6 cents per K.W.H.
For next 200 K.W.H. per month 5 cents per K.W.H.
For all over 300 K.W.H. per month 4 cents per K.W.H.
Minimum monthly bill 50 cents.

Power Rates.

For first 100 K.W.H. per month 4 cents per K.W.H.
For next 200 K.W.H. per month 3 cents per K.W.H.
For all over 300 K.W.H. per month 2¾ cents per K.W.H.

Minimum monthly bill 25 cents per rated horse power of motor.

Ten per cent. discount allowed on all bills for current if paid within 10 days after due.

Said rates shall become effective May 1, 1918."

It will be observed that the commission's order in this case cites that the lighting company are receiving their power from the Northern Indiana Gas and Electric Company under a contract with that company; that when it commenced to operate under that contract it abandoned property and machinery which had formerly been used by the electric plant, valued by the commission at $13,721. The commission did not include that amount in fixing the valuation of appellant's property, and the commission further refused to put any value upon the contract with the Northern Indiana Gas and Electric Company, and refused to hear any evidence by which the value of said contract could be ascertained. It appears from the undisputed evidence that the appellant held a contract with the Northern Indiana Gas and Electric Company, executed in the month of September, 1911, by the terms of which appellant agreed to purchase and the said electric company agreed to sell and furnish to appellant all of the electric current that appellant might use in or about its business in the city of Valparaiso.

In its order the commission recognized this contract as conferring valuable property rights upon the appellant. These property rights were obtained before the enactment of the Public Service Law, and prior to the time that the Valparaiso Lighting Company surrendered its franchises, but in fixing a valuation on appellant's property for rate-making purposes this contract of appellant's was not considered, and no valuation was fixed thereon for the purpose of rate making or for any other purpose. In surrendering

264    SUPREME COURT OF INDIANA,

Valparaiso Lighting Co. v. Public Service Comm.—190 Ind. 253.

its franchise appellant did not part with any of its property except the franchise. §§100, 102, Acts 1913 p. 167, §§10052w3, 10052y3 Burns 1914. Therefore the property of appellant in this contract, having remained appellant's property after the surrender of its franchises, was property that the municipality had a right to buy under the Public Service Law, and it was property that the law required it to buy, if it desired to obtain title to it. It is claimed by appellant that the act of the commission in refusing to consider the value of appellant's contract and its rights thereunder for the purpose of rate making and attempting to appropriate all the benefits thereof to appellant's customers was confiscatory, and amounted to the taking of appellant's property without compensation, and is a violation of both the Constitution of the United States and of the State of Indiana. As supporting appellant's contention, see Art. 14, §1, amendments of Constitution of United States, (§39 Burns 1914) ; Art. 1, §21, Constitution of Indiana (§66 Burns 1914) ; Smyth v. Ames (1897), 169 U. S. 466, 18 Sup. Ct. 418, 42 L. Ed. 819.

This contract so held by appellant and its rights thereunder are appellant's property, and it had as much right to have such contract and rights valued for the purposes of rate making it did any other property that it possessed, and it had a right to have such property valued for the purposes of rate making to the same extent that it would have such right respecting its old generating system, had it continued to use the same. Appellant's contract with the Northern Indiana Gas and Electric Company was an asset which it had a right to have considered in fixing a rate which appellant might charge consumers of electrical energy in the city of Valparaiso. See Bonbright v. Geary (1913), (D. C.) 210 Fed. 44.

The case cited, Bonbright v. Geary, supra, was a de-

cision of the United States District Court for the District of Arizona before Circuit Judge Morrow and District Judges Van Fleet and Sawtelle, and the purpose of the action was to restrain the enforcement of certain gas and electric-light rates prescribed by the Corporation Commission of Arizona. It appears that the public utility had a contract with the United States government for the supply of electrical energy for a period of ten years and that this contract had seven years to run, and the value of the contract was not considered in fixing a rate which the utility might charge consumers. The court in the case cited, on page 52 thereof, said: "There is another feature of the case which appeals to us for consideration, and that is the valuation of the contract with the federal government for power. The company values the remaining term of this contract at $110,000; the Corporation Commission omitted it altogether."

It is said on page 53 of the same case: "Under this contract the present corporation is receiving electricity from the Reclamation Service which it supplies to its customers; it takes the place of a plant which cost $189,000. The contract went into effect in 1909 or 1910 and has six or seven years to run. The value of the remaining term is estimated by the complainant at the sum of $110,000. We are of opinion that this contract has a substantial value for the company, but what that value is we do not now determine. We think the Corporation Commission should have given this contract a reasonable valuation in view of all the circumstances of the case, and that the omission to make such valuation was a substantial error in the proceedings."

The principle in that case is the same as that involved in the case at bar, and we are constrained to hold that failure or refusal of the commission to value the contract held with the Northern Indiana Gas and Electric

Company was error.   The lighting company had a right to have a valuation fixed upon this contract, and that valuation considered in fixing the rate which the company would be permitted to charge.

Appellant urges that the trial court erred in overruling its request for a special finding of facts.   At the proper time appellant made a request for special

3.   findings, and the same was overruled, and it excepted to the overruling of such motion.   Appellant cites to support its contention: §1, Public Service Law, Acts 1913 p. 167, §10052a *et seq.* Burns 1914; §78, *supra* (§10052z2 Burns 1914); §85, *supra* (§10052g3 Burns 1914); §108, *supra* (§10052e4 Burns 1914); §577 Burns 1914, §551 R. S. 1881; *Calumet Service Co.* v. *Chilton* (1912), 148 Wis. 334, 135 N. W. 131.

Section 78 of the Public Service Law, *supra*, provides that the practice in cases that are appealed to the courts from an order of the commission shall be the same as in civil actions.   The exact language of the law is: "And the same shall be tried and determined as other civil actions."

There is no express provision in the law prohibiting special findings.   On the contrary, the express provision of the Public Service Law is that the practice shall be the same as in civil actions.   Neither is there any denial by implication in the Public Service Law of the right to a special finding of facts.   We think the appellant was entitled to a special finding of facts, and the refusal of the court to make the same, when request was made at the proper time, was error.

The appellee insists that appellant is estopped from denying the validity of the commission's order establishing electrical rates, for the reason that ap-

4.   pellant has accepted the benefit of a ten per cent. temporary surcharge, which the order of the commission permits appellant to add to all gas bills

NOVEMBER TERM, 1920.　　　267

Valparaiso Lighting Co. v. Public Service Comm.—190 Ind. 253.

rendered until not later than May 1, 1920. In other words, it is claimed that the causes were consolidated, and that but one order was in fact entered, and that by accepting benefits thereunder appellant is estopped to deny the validity of any other portion thereof. In that connection appellee cites a number of cases relative to the judgments of courts. The order of the commission establishing rates is not a judgment. It is an administrative order, and cases relative to judgments of courts are not applicable. *Public Service Commission* v. *Cleveland, etc., R. Co.* (1919), 188 Ind. 197, 121 N. E. 116.

In this case there were two petitions filed, one by consumers, asking for a reduction in electrical rates, and one by appellant, asking authority to add a temporary surcharge of thirty per cent. on all its bills pending abnormal conditions incident to the war. These petitions were filed at different times and docketed separately by the commission and given different numbers. There never was any order of consolidation. The opinion of the commission recites that the causes were "consolidated for the purposes of hearing." Appellee contends that but one order was entered. It is true that but one order was entered in a physical sense. That is to say, it is embraced in a single document and bound under one cover, but in fact it is an order in both of these cases. It in effect granted the petition of the consumers to reduce electrical rates, and granted appellant's petition to add a surcharge, but limited the surcharge to ten per cent. on bills for gas, and provided that this right to a surcharge should expire on May 1, 1920.

We are convinced that the act itself, properly construed, permits a party to appeal to the courts and have any rate or rates with which he may be dissatisfied reviewed, and by accepting one rate he is not precluded

from disputing the validity of another rate, even though both rates may be established in the same order. Section 78 of the Public Service Law, *supra,* is, so far as applicable, as follows:

"Any public utility and any person or corporation in interest being dissatisfied with any order of the commission fixing any rate or rates, tolls, charges, schedules, joint rate or rates, * *. * .may commence an action in the circuit or superior court of any county in which such order of the commission is operative against the commission as defendant to vacate or set aside, any such order or enjoin the enforcement thereof on the ground that the rate or rates, tolls, charges, schedules, joint rate or rates fixed in such order is insufficient, unreasonable or unlawful * * *."

Under that statute there is express legislative authority for reviewing a particular rate without reviewing all of the rates that may be established by the commission. A party might be satisfied with the rate established for gas, but dissatisfied with the electrical rate, and the acceptance of the one does not preclude him from having the reasonableness or the validity of the other reviewed in the courts. There is no logical or legal connection between an electrical rate and a rate for gas, and the commission itself has no power to make a rate for gas dependent upon a rate for electricity. The consumers of gas and electricity may be, and often are, altogether quite different persons, and it would not be reasonable to require one person to pay a high gas rate because somebody else is paying a reduced electrical rate. The rates for gas and electricity ought to be kept entirely separate and apart from each other. Neither one should be made to depend to any extent upon the other, since consumers of one may not be consumers of the other, and it would be wrong to require the consumers of one such commodity to bear the

burden that should be borne by the consumers of the other commodity. Each rate should stand or fall upon its own merits.

There is no merit in appellee's contention that appellant is estopped by accepting the surcharge on bills for gas. It was error of the trial court not to consider the value of appellant's contract with the Northern Indiana Gas and Electric Company in its valuation for the purpose of making rates. The trial court also erred in refusing to grant appellant's motion for a special finding. Other errors alleged in appellant's brief and discussed therein need not now be considered as they will not probably occur upon a new trial of the cause.

Judgment is reversed, with instructions to the trial court to sustain appellant's motion for a new trial.