436    SUPREME COURT OF INDIANA,

Public Service Com. *v.* Lake Erie, etc., R. Co.—191 Ind. 436.

## PUBLIC SERVICE COMMISSION OF INDIANA ET AL. *v.* LAKE ERIE AND WESTERN RAILROAD COMPANY.

[No. 23,498.    Filed January 6, 1922.]

1. PUBLIC SERVICE COMMISSIONS.—*Review of Orders by Court.— Commission's Finding of Facts.—Conclusiveness.*—Finding of facts made by the Public Service Commission are not conclusive upon the trial court in an action to set aside an order of the commission, since in such case the court is required to hear the case *de novo* and determine it from the evidence adduced at the trial under §5536 Burns 1914, Acts 1913 p. 820, §10052z2 Burns 1914, Acts 1913 p. 167.   p. 439.

2. CARRIERS.—*Order Requiring Railroad to Interchange Carload Lots with Interurban Road.—Evidence.—Sufficiency.*—In a proceedings by an interurban electric railroad to require a steam railroad to treat such interurban as a common carrier of freight, and to interchange carload lots with the interurban, and to require joint freight rates between the two evidence *held* insufficient to sustain an order granting the petition, there being a failure to show any public necessity therefor.   p. 443.

3. JUDGMENT.—*Motion for Modification.—Requisites.*—A motion to modify a judgment must state the reasons for the modification asked.   p. 444.

From Marion Superior Court (106,966); *Henry J. Spaan,* Special Judge.

Action by the Lake Erie and Western Railroad Company against the Public Service Commission of Indiana and others.   From a judgment for plaintiff, the defendants appeal.   *Affirmed.*

*Ele Stansbury,* Attorney-General, and *F. J. Lewis Meyer,* for appellants.

*John B. Cockrum, S. D. Miller, F. C. Dailey* and *W. H. Thompson,* for appellee.

WILLOUGHBY, J.—This was an action commenced by appellee in the Marion County Superior Court to set aside and have declared null and void an order of the appellant, Public Service Commission of Indiana, as follows:

"It is therefore ordered by the Public Service Commission of Indiana, that the Lake Erie & Western Railroad Company and the Chicago, Lake Shore & South Bend Railway Company file with this Commission joint rates for the transportation of all kinds of freight in carload lots between points in Indiana on the lines of the Chicago, Lake Shore & South Bend Railway Company to and from points in Indiana on the lines of the Lake Erie & Western Railroad Company and make said rates effective in not more than sixty (60) days from this date.

"That said rates be reasonable and just rates.

"That said Lake Erie & Western Railroad Company receive from said Chicago, Lake Shore & South Bend Railway Company all carload freight moving under such joint tariffs or any joint tariffs fixed by this commission destined to points in Indiana on the line of road of said Lake Erie & Western Railroad Company and deliver to said Chicago, Lake Shore & South Bend Railway Company all such carload freight originating at points in Indiana on the line of the Lake Erie & Western Railroad Company destined to points in Indiana on the line of the Chicago, Lake Shore & South Bend Railway Company.

"That said Chicago, Lake Shore & South Bend Railway Company shall receive from and deliver to said Lake Erie & Western Railroad Company all freight moving in carload lots from points in Indiana on one of said roads to points in Indiana on the line of the other of said roads.

"Said Chicago, Lake Shore & South Bend Railway Company is ordered to supply a sufficient number of cars and engines to promptly meet the requirements of the traffic originated on its line and to move promptly and deliver to destination all carload freight transferred to it for delivery to points on its line."

438 SUPREME COURT OF INDIANA,

Public Service Com. *v.* Lake Erie, etc., R. Co.—191 Ind. 436.

To the complaint of appellee the appellants filed a general denial. A trial upon the issues thus formed resulted in a finding by the Marion Superior Court in favor of the appellee. The following judgment was rendered:

"It is therefore considered and adjudged by the court that the order of the Public Service Commission of Indiana, entered on the 30th day of April, 1917, a copy of which is set out in the amended and supplemental complaint herein, is null and void and that it be and is hereby set aside and rescinded and that the defendants and each of them be and they are each hereby perpetually enjoined from enforcing or attempting to enforce said order."

A motion for a new trial was overruled and exceptions taken, and the appellants each severally and separately made a motion to modify the order and judgment of the court. This motion was also overruled. Appellants appeal and assign errors as follows: (1.) The court erred in overruling appellants' motion for a new trial; (2.) the court erred in overruling appellants' motion to modify the judgment.

The only specifications in the motion for new trial are: First, the decision of the court in said cause is not sustained by sufficient evidence; and second, the decision of the court in said cause is contrary to law.

It is conceded that the Chicago, Lake Shore and South Bend Railway is an electric interurban railway. It will hereinafter be referred to as the "interurban."

It is claimed by appellants that the findings of fact made by the Public Service Commission upon which the order is based are conclusive on the Marion Superior Court. We do not think that this claim is justified by reason or authority.

The court in which the action is brought does not sit as a court of review to correct errors of the commission;

but on the contrary the court in such action is
1. required to hear the case *de novo* and determine
it from the evidence adduced at the trial. The
statutes provide that all such actions shall be tried and
determined as other civil actions. See, §10052z2 Burns
1914, Acts 1913 p. 167; §5536 Burns 1914, Acts 1913
p. 820.

In *Public Service Commission* v. *Cleveland, etc., R.
Co.* (1918), 188 Ind. 197, 121 N. E. 116, the court said:
"Appellee filed this action in the Marion Circuit Court
asking to have said order annulled and set aside. The
trial in the circuit court resulted in a finding and judg-
ment in favor of the plaintiff by which the order of the
commission was adjudged to be null and void. The
Public Service Commission appealed from this judg-
ment, assigning as error that the trial court erred in
overruling its motion for a new trial. The reasons as-
signed in the motion for a new trial were that the de-
cision of the trial court was not sustained by sufficient
evidence, and that such decision was contrary to law.

"In support of the reasons thus assigned, it is as-
serted by appellant that the findings of fact made by the
Public Service Commission, upon which an order is
based, are conclusive on the court if there is substantial
evidence to sustain such findings. It seeks to invoke the
same rule in favor of findings of the commission which
obtains in courts of appeal and error in favor of the
findings of trial courts. This contention cannot be sus-
tained, as it is out of harmony with the entire spirit
of the act under which such proceedings are conducted.
By §6 of the Railroad Commission Act (Acts 1913 p.
820, §5536 Burns 1914), it is provided that any carrier
or other party, dissatisfied with any final order made
by the commission, may, after its ruling on petition for
rehearing and within twenty days from the date of such
ruling, begin an action against the commission in any

court of competent jurisdiction in any county of this state into or through which any carrier operates to suspend or set aside any such order. It is evident that the court in which such an action is brought does not sit as a court of review to correct errors of the commission; but, on the contrary, it is clear that the court in such action shall hear the case *de novo* and determine it from the evidence adduced at the trial. The same section of the act provides that, in all actions in the courts of this state authorized by this act, the rules of evidence shall be the same as in the trial of civil cases as now provided by law, excepting as otherwise provided in this act. Under similar statutes, it has been decided that the court in an action brought to set aside an order of the commission was not bound by the findings of the commission, but that it was the duty of the court to determine the case from a consideration of the evidence adduced."

See, *Interstate, etc., Commission* v. *Louisville, etc., R. Co.* (1913), 227 U. S. 88, 33 Sup. Ct. 185, 57 L. Ed. 431; *Oregon R., etc., Co.* v. *Fairchild* (1912), 224 U. S. 510, 32 Sup. Ct. 535, 56 L. Ed. 863; *Ind. Harbor Belt R. Co.* v. *Public Service Com.* (1918), 187 Ind. 660, 121 N. E. 540.

In the case of *Oregon R., etc., Co.* v. *Fairchild, supra,* the court said: "The act further provided that after the administrative body had acted, the carrier should have the right to test the lawfulness and reasonableness of the regulation in the Superior Court, where every error in rejecting or excluding evidence, or otherwise, could be corrected. On that trial the court was not bound by the finding of fact, but, like the Commission, it was obliged to weigh and consider the testimony and to give full effect to what was established by the evidence, since it acted judicially, 'under an imperative obligation, with a sense of official responsibility for im-

partial and right decision, which is imputed to the discharge of official duties.'"

In the instant case the trial court found that no public necessity had been shown to have existed for the order prayed for at the time the petition was filed.

It appears from the evidence adduced that there was no demand for intrastate commercial shipments between the two roads in question; that the territory in question was sufficiently served by railroad facilities; that the interurban railway company has but few cars and is not now ready to bear its part of the burden of freight business in northern Indiana. It began only a few months before this petition was filed to haul freight, and the testimony of its president, Mr. Wilcoxon, shows that the amount of freight that will be handled is very largely conjectural. In one instance he testifies as follows: "We expect to get business from a very large number of manufacturing establishments." But there is no attempt to show that these establishments would ship over the interurban road in carload lots.

Concerning the evidence, we quote from the opinion of the trial judge as follows, viz.:

"After a careful study of the testimony the court is impressed with the idea that at the time this petition was filed before the Public Service Commission the Chicago, Lake Shore & South Bend Railway Company was anxious and willing to go into the freight business but that it was not prepared to bear its share of the burdens of exchange of freights with the steam roads with which it came in contact. It had practically no equipment of cars, no switch engines, no switching facilities to speak of, no side tracks to amount to anything, but it was possessed of the determination to furnish all these as rapidly as its freight business developed.

442    SUPREME COURT OF INDIANA,

Public Service Com. *v.* Lake Erie, etc., R. Co.—191 Ind. 436.

"There was no general demand from shippers in northern Indiana that could use the lines of the interurban company for the purposes set forth in the petition. There is proof that some part of the public would be convenienced by the arrangement prayed for in the petition, but in the opinion of this Court, not a sufficient number to justify calling it a public necessity. * * *

"The fact that the evidence clearly shows that the shippers of northern Indiana were making no demand, has weight with this Court upon the question of public necessity. There is no doubt that to grant the prayer of the petition would inure to the benefit of the interurban company but that is not the criterion as the court views it. It must be a public necessity existing outside of the interurban company.

"It is also very clear from the testimony of Mr. Wilcoxen that northern Indiana is full of railroads, and they have shipping arrangements among themselves that would seem to cover every reasonable contingency that might arise for the transport of freight. This being the case the court must take this into consideration in making up its mind on the question of public necessity. One more railroad may help a few shippers, but the 'public necessity' that must arise, concerns the entire commercial community. And if northern Indiana is already full of railroads with shipping facilities such as the evidence clearly shows, it will only divide the profits by installing another railroad, instead of helping legitimate public necessity.

"The Court is impressed with the fact that out of the thousands of shippers in northern Indiana only two or three testified before the Public Service Commission in the interest of the petition of the Interurban Company. If there were such general inconvenience as is insisted on why were not more shippers produced before the

NOVEMBER TERM, 1921.          443

Public Service Com. *v.* Lake Erie, etc., R. Co.—191 Ind. 436.

Commission? The whole case seems to rest almost exclusively upon generalities and rather vague deductions."

In the case of *Oregon R., etc., Co.* v. *Fairchild, supra,* it was held that—"An adequate opportunity to defend will not sustain, as affording due process of law, an order of a State Railway Commission requiring trackage connections between competing railway companies for the interchange of business, if the order was arbitrary or unreasonable, and not justified by any public necessity.

"The place and persons interested, the volume of business to be affected, and the saving in time and expense by the shipper, as against the cost and loss to the carrier, must be considered in determining the reasonableness of, and the public necessity for, an order of a State Railway Commission requiring trackage connections for the interchange of business."

In the instant case there is no proof of inadequate service and no proof of public complaint or a public demand. There is no substantial evidence to show

2. what business would be routed over the connections prayed for in the petition; nor is there any satisfactory evidence what saving would come to the public by such enforced interchange of freight. There is no evidence as to the expense to the Lake Erie and Western Railroad Company, this enforced interchange would entail, nor any evidence of any special benefits to said company, nor to the general public. The order was not justified by evidence showing a public necessity. See, *Chicago, etc., R. Co.* v. *Public Service Commission* (1918), 188 Ind 334, 121 N. E. 276, 123 N. E. 465. The decision of the trial court is sustained by the evidence and is not contrary to law.

Appellants say the court erred in overruling their

motion to modify the judgment. The motion to modify the judgment omitting the formal parts thereof is as follows: "Come now the defendants, Public Service Commission and The Chicago, Lake Shore & South Bend Railway Company, and separately and severally move that the order and judgment herein entered be modified as follows by adding the words: 'without prejudice to the right of the defendant Chicago, Lake Shore & South Bend Railway Company to make other application or complaint against the plaintiff, the Lake Erie & Western Railroad Company hereinafter, for the establishment of through and joint rates on the respective lines.' "

This motion does not state any reason for the modification asked. The trial court is entitled to know on what grounds the motion to modify a judgment 3. is based, and be given an opportunity to correct the error, if any; otherwise it may be overruled without error. *Ricketts* v. *Dorrell* (1877), 59 Ind. 427; *Murphy* v. *Teter, Admr.* (1877), 56 Ind. 545; *Hay* v. *State, ex rel.* (1877), 58 Ind. 337; *People* v. *Kipley* (1897), 167 Ill. 638, 48 N. E. 688; *Borror* v. *Carrier* (1905), 34 Ind. App. 353, 73 N. E. 123; *Douglas* v. *Indianapolis, etc., Traction Co.* (1906), 37 Ind. App. 332, 76 N. E. 892; *Zink* v. *Zink* (1914), 56 Ind. App. 677, 106 N. E. 381; *Poehlmann* v. *Kennedy* (1874), 48 Cal. 201.

No error appears in the record. Judgment affirmed. Travis, J., concurs in result.