INDIANA TELEPHONE CORP. *v.* PUBLIC SERVICE COMMISSION OF INDIANA

[No. 19,158. Filed December 14, 1960.]

316

*Claude M. Warren, Robert D. Armstrong, Gilliom, Armstrong and Gilliom,* of counsel, *Goodrich, Campbell and Warren,* of counsel, all of Indianapolis, *Cooper, Cooper, Cooper & Cox,* of counsel, of Madison, and *Nordhoff & Nordhoff,* of counsel, of Jasper, for appellant.

*George L. Diven,* Public Counselor, *Paul Schnaitter,* of Madison, *Walter F. Jones,* of Indianapolis and *Edwin K. Steers,* Attorney General, for appellees.

BIERLY, J.—The Indiana Telephone Corporation, appellant herein, filed its petition with the Public Service Commission of Indiana, appellee, on July 17, 1956, for an increase of its rates and charges. In its petition appellant alleged that the rates and charges then in effect,

and which had been in effect since 1947, were unreasonably low, unjust, unfair and inadequate, and prayed the Commission to authorize new rates and charges for the appellant which would be reasonable, fair, just and adequate, and which would enable the appellant to earn a fair return of and on the fair value of its property used and useful in its telephone utility business.

On the basis of evidence presented at a hearing on January 11, 1957, the Commission issued its order wherein it found, among other things: (1) The fair value of the property of the appellant used and useful in rendering telephone service; (2) the then net operating revenue of the appellant on the basis of the 1957 rates; (3) that the 1947 rates were not sufficient to provide a fair return of and on the fair value of the property so found; and (4) that the 1947 rates should be increased so as to produce additional gross operating revenues of $744,000, thereby producing additional net operating revenues of $353,500. Further, the Commission ordered the appellant to file with the accounting department of the Commission a study showing the 1947 rates and charges; also the new and increased rates and charges calculated to yield the additional net operating income; thence upon approval of such study to file with the tariff department of the Commission a schedule of new and increased rates and charges, and thereafter to put said new increased rates and charges in effect.

The Commission further found that the telephone service being rendered by appellant was reasonably adequate but that certain additions and improvements should be made to the appellant's plant and equipment at various exchanges. The said Commission ordered and directed the appellant to make such additions and

improvements and then to file with the Commission reports showing that such improvements had been made. The Commission further ordered that the new and increased rates and charges should become effective as of February 1, 1957, except in certain exchanges in which improvements were to be made prior to the rates becoming effective.

The Taxpayers' League of Madison thereafter, on the 31st day of January, 1957, filed with the Commission its petition for rehearing, which petition was granted by order of the Commission under date of March 5, 1957. Ten days later, on the 15th day of March, certain customers of appellant in Dubois County, Indiana, filed their petition that the order of the Commission dated March 5, 1957, be extended to include all subscribers within Dubois County, and that they be permitted to appear and present evidence at such rehearing. Subsequently, on the 19th day of March, 1957, the Commission entered its amended order granting a rehearing and ordering the order of January 11, 1957 to be continued in effect pending said rehearing.

On the basis of the rehearing the Commission entered its findings and order dated and approved January 24, 1958, which findings and order omitting formal parts thereof are as follows:

"The Commission, having heard the opening statement of counsel, having examined the exhibits admitted into the evidence in this cause and being duly advised in the premises, now finds that:

1. The Indiana Telephone Corporation is a corporation duly organized and existing under the laws of the State of Indiana and has the authority to operate a telephone utility.

2. The Indiana Telephone Corporation owns and operates 21 dial telephone exchanges and 12 manual telephone exchanges in southern Indiana

and serves approximately 18,444 dial telephone stations and 16,946 manual telephone stations, providing local exchange service, intrastate toll service and interstate toll service.

3. That an order was issued by the Public Service Commission of Indiana on January 11, 1957, authorizing the Indiana Telephone Corporation to increase its operating revenues $744,000 and directed the Company to file a study showing the then present rates and the proposed rates and charges which would produce the above-mentioned increase. The Company filed such study and subsequent thereto also filed with the Tariff Department of the Public Service Commission of Indiana a complete schedule of rates and charges calculated to produce the increased revenue so ordered.

4. That the Public Service Commission of Indiana has jurisdiction in respect to only the local exchange service and intrastate message service.

5. That the schedule of rates filed reflecting the increases in revenue applied generally only to local service rates with no change in intrastate message rates.

6. That testimony introduced in both proceedings is not sufficient for the Commission to determine the proportion contributed to over-all earnings by the three major classifications of service; (1) local exchange service, (2) intrastate message service, and (3) interstate message service. In its presentation the Company alluded to certain increases in interstate revenues and brought forth certain testimony as regards to methods, cost and length of time required to make an allocation study of revenues, expenses and plant.

7. That the property actually used and useful for the convenience of the public in its intrastate operations in the State of Indiana cannot be determined from testimony presented before the Commission. Nor can the appropriate expenses for rendering such services be determined.

8. That the testimony adduced is not sufficient for the Commission to determine whether the rates filed are properly applicable to the cost of service

for intrastate message service and local exchange service.

9. The Indiana Telephone Corporation has not borne the burden of proof required of it in that it has failed to provide proper and adequate information to allow the determination of the reasonableness of the rates now being charged by the Company. The Company's general books or records cannot enable the Commission staff nor the Commission to determine plant, nor expenses related to interstate services. The Company did not introduce any testimony nor exhibits to assist the Commission in the determination of the just and reasonable rates for intrastate local exchange service and toll service.

10. The Commission finds lacking such information and finds that it cannot approve the tariff sheets and rates stated therein (now on file with this Commission and being charged) and that they should be cancelled and stricken from the files of the Commission and that the previous rate schedules and rates in effect, to-wit, Supplement No. 1 to P. S. C. I. No. T-12, issued January 23, 1950 and Supplement No. 2 to P. S. C. I. No. T-11, issued April 22, 1952, are the only proper and legal rates the Commission can approve and enforce at this time, and that P. S. C. I. No. T-13, Part II, Section 1, Sheets 1 through 6, inclusive, are hereby cancelled.

It Is Therefore Ordered by the Public Service Commission of Indiana,

1. That the order of this Commission in the above cause dated January 11, 1957 is hereby specifically cancelled.

2. That P. S. C. I. No. T-13, Part II, Section 1, Sheets 1 through 6, inclusive, be and the same are hereby cancelled as of February 1, 1957 because of insufficient evidence to support the same.

3. That in lieu thereof, Supplement No. 1 to P. S. C. I. No. T-12 and Supplement No. 2 to P. S. C. I. No. T-11 are reinstated effective as of February 1, 1957.

4. That all monies collected under P. S. C. I. No. T-13, Part II, Section 1, Sheets 1 through 6, inclu-

sive, are hereby declared to have been illegally collected, and the difference between the monies collected under P. S. C. I. No. T-13, Part II, Section 1, Sheets through 6, inclusive, and Supplement No. 1 to P. S. C. I. No. T-12 and Supplement No. 2 to P. S. C. I. No. T-11, are hereby ordered refunded to the affected ratepayers, and the Indiana Telephone Corporation is granted 180 days from the date of this order to effect such refund.

It is Further Ordered that Petitioner, Indiana Telephone Corporation, shall pay into the Treasury of the State of Indiana, through the Secretary of this Commission, the sum of $2,645.63, which sum is itemized as follows, as well as any future additional charges that may be incurred in this cause:

| | |
|---|---:|
| Accounting Costs | $1,727.30 |
| Engineering Costs | 806.78 |
| Advertising Costs | 111.55 |
| Total | $2,645.63 |

Van Ness, Skelton and Haymaker Concur:

Approved: January 24, 1958.

It is the Commission's decision, ruling and order of January 24, 1958, which is the subject of this appeal.

The appellant filed assignment of errors consisting of twenty-two separately numbered assignments, the first two being as follows:

Assignment of Error No. 1. "The decision of the Commission dated, entered and approved January 24, 1958, is contrary to law."

Assignment of Error No. 2. "The decision, ruling and order of the Commission dated, entered, and approved January 24, 1958, is contrary to law."

The appellant prays that such decision, ruling and order of the Commission be in all things reversed, vacated and set aside, and that the enforcement thereof be permanently enjoined and the cause remanded for further proceedings according to law.

By failure of the appellant to treat assignment of errors numbers 13, 14, 15 and 16 under the heading of "Argument," as required by Rule 2-17 (e), the same are deemed waived by Rule 2-17 (f) and will not be further considered.

The appellant alleges that pursuant to the order of the Commission under date of January 11, 1957, appellant filed with the Commission the required reports as to additions and improvements to its service, plant and facilities, and on September 30, 1957, while the rehearing was in progress the appellant filed with the tariff department of the Commission a new and revised schedule or tariff, stating and setting forth all its rates and charges for telephone service. This schedule or tariff carried forward, embodied and stated, without change, the 1957 rates as filed with the tariff department of the Commission on January 16, 1957, and the Commission formally and expressly approved the said new and revised schedule or tariff. Thus, under the Public Service Act, the 1947 rates ceased to be the legal rates and the 1957 rates became the legal rates, binding upon everyone concerned.

Appellant contends that by its order of March 19, 1957, the Commission did not find that the 1957 rates were excessive and unreasonable or that the 1947 rates were reasonable and adequate, and the Commission did not purport to displace the 1957 rates or to reinstate the 1947 rates, but on the contrary ordered that the Commission's order of January 11, 1957, establishing the 1957 rates should continue in effect pending said rehearing and further order of the Commission.

The issues, according to the appellant, in the original hearing held, and which formed the basis of the January 11, 1957 order were:

First: Were the 1947 rates unreasonable and inadequate?

Second: If so, what rates and charges, in lieu thereof, were reasonable, adequate and not excessive?

Appellant contends the issues at the rehearing were these:

First: Were the 1957 rates unreasonable and excessive?

Second: Were the 1957 rates unreasonable and inadequate?

Third: If so, and in either case, what rates and charges, in lieu thereof, would be reasonable, adequate and not excessive.

Appellant contends that by its order of January 24, 1958, which it attacks in this appeal, "the Commission wholly ignored all of these issues and made no findings of any kind concerning them.

Appellees, contending that the order of the Commission, dated January 11, 1957, had been set aside and nullified by the order of March 5, 1957, and further contending the Commission's order of March 19, 1957 was null and void, assert the issues at the rehearing culminating in the order by the Commission on January 24, 1958, were:

First: Were the 1947 rates and charges reasonable and just?

Second: If not, what rates and charges in lieu thereof would be reasonable and just?

(Appellees' brief p. 6)

The reason and ground No. 2 of The Taxpayers' League of Madison in its petition for rehearing filed with the Commission on January 31, 1957, is as follows:

"2. The Public Service Commission of Indiana in determining the increase in income to which Indiana Telephone Corporation was entitled took into consideration factors which were improper, unlawful and unjust and fixed said increase by including such factors."

and the petition closed with this prayer:

"Wherefore, it is respectfully prayed that the Public Service Commission of Indiana set aside its former orders herein and grant a rehearing in this cause."

Following protests by other subscribers of the appellant, the Public Service Commission issued its order of March 5, 1957. The findings and orders of the Commission based on argument of counsel and examination of exhibits and files of the Commission were as follows:

"1. That it is to the best interest of the public that the Commission hear additional evidence in said cause.

"2. That the petition of the Taxpayers' League of Madison, dated January 31, 1957, be approved and a rehearing of said cause be instituted.

"It is Therefore Ordered by the Public Service Commission of Indiana that Cause No. 26,794 be opened for rehearing and that the petition of the Taxpayers' League of Madison, dated January 31, 1957 be granted as prayed.

"It is Further Ordered that a date be fixed for said hearing and that notice be given as provided by law.

"Approved: March 5, 1957."

As heretofore stated, on March 15, 1957, certain subscribers of appellant in Dubois County filed a petition to be permitted to be included and to appear and present evidence at the rehearing. The Public Service Commission executed its findings and orders under date of

March 19, 1957 clarifying and amending its findings and orders of March 5, 1957. The salient features of the findings and orders following the deletion of those points of the findings and orders approved by the Commission of March 5, 1957 are as follows:

"1. That it is to the best interest of the public that the Commission hear additional evidence in said cause covering the increase of rates and charges for all of the exchanges owned and operated by Indiana Telephone Corporation.

"2. That a rehearing of said cause should be instituted covering all matters contained in the order of the Commission in this cause and dated January 11, 1957.

"3. That the order entered into in this cause on January 11, 1957, continue in effect pending said rehearing and further order of this Commission.

"It is Therefore Ordered by the Public Service Commission of Indiana that Cause No. 26794 be opened for rehearing on all matters contained in the order of this Commission in said cause and dated January 11, 1957.

"It is Further Ordered that a date be fixed for said hearing and that notice be given as provided by law.

"It is Further Ordered that the Order entered in this cause on January 11, 1957, continue in effect pending said rehearing.

"Approved: March 19, 1957."

The appellees argue that when the Taxpayers' League of Madison filed a "Petition for Rehearing" on the 31st day of January 1957, the petition sought to set aside the order of the Commission dated January 11, 1957, and thus set aside the rates therein prescribed prior to the rehearing; that a logical consequence thereof was that the said petition was a motion for a new trial. The appellees further argue that by its order of March 5, 1957, the Commission vacated its order of January

11, 1957, in its entirety, thus including the legal and effective rates therein set forth, and thereby in effect, granted a motion for a new trial equivalent to a motion for a new trial in a civil action at law. Appellees further contend that §54-444, Burns' 1951 Replacement (Supp.), which recognizes a petition for a rehearing, authorized a motion for a new trial, the same as a motion for a new trial in a civil action at law, with the same resultant effect that follows the granting of a motion in a civil action by a trial court. By this reasoning, appellees allege that the Commission's Order of March 5, 1957 vacated all findings, conclusions and orders contained in its Order of January 11, 1957. Thus, appellees further contend that the rates of 1957, as set forth in said order, were set aside and which rates the Commission therein had found reasonable, prescribed the same as the legal and effective rates, which rates the subscribers must pay effective February 1, 1957; that said Order of March 5, 1957 restored the pre-existing rates prior to said Order of January 11, 1957 and all findings, evidence heard, and orders entered at hearings establishing the legal and effective 1957 rates were canceled and same vacated.

Appellant takes sharp issue with appellees' reasoning and conclusions set forth above in interpreting the Commission's Order of March 5, 1957. In the first instance, appellant contends that the Taxpayers' League of Madison filed a petition entitled "Petition for Rehearing" and not a motion for a new trial.

Appellant further contends that upon said Petition for Rehearing, the Commission had authority to set aside the Order of the Commission dated January 11, 1957, which included the 1957 rates, upon the basis of a rehearing but not prior thereto; that said Order of the Commission, dated March 5, 1957, did not grant a

new trial nor set aside the Order of January 11, 1957, prior to a rehearing, but that the 1957 "Order should not be set aside, if at all, only after a rehearing was completed and upon the basis of evidence introduced at both the hearing and the rehearing." Appellant further logically reasons that when the Commission granted the Petition for Rehearing which included in its prayer a request that the Commission set aside its Order of January 11, 1957, this could not bind the Commission, but that it was the prerogative of the Commission to effectuate and formulate an order based upon the Petition for Rehearing. The Commission clarified its Order of March 5, 1957 by the Order of March 19, 1957.

Appellant further contends that regardless of the implications that may be deduced from an analysis of the Commission's Order of March 5, 1957, the Commission on March 19, 1957 issued an order which corrected, clarified and superseded the order of March 5, 1957 and thereby eliminated said order of March 5, 1957 from any further legal consideration by the Commission.

The Legislature vested administrative functions in the Public Service Commission but did not vest judicial functions in said Commission. *Public Service Commission* v. *Cleveland, etc., R. Co.* (1918), 188 Ind. 197, 201, 121 N. E. 116; *Southern Ind. R.* v. *Railroad Com., etc.* (1909), 172 Ind. 113, 87 N. E. 966. In interpreting §54-443, Burns' 1957 Supplement, wherein it provided that any final ruling or order of the Public Service Commission may be appealed to the Appellate Court for error of law, this court in the case of *Boone Co. REMC et al.* v. *Public Service Com.* (1958), 129 Ind. App. 175, 155 N. E. 2d 149, said:

". . . Strictly speaking, it is not an 'appeal', but it is a judicial review by the Appellate Court,

which is the court of exclusive original jurisdiction. . . ."

All proceedings before the Public Service Commission are not judicial in their nature, hence, their orders must be termed as administrative orders but not as judgments. Thus, when the Public Service Commission fixes rates, etc., as was done by the Order of the Commission dated January 11, 1957, it was an administrative order but not a judgment. *Valparaiso Lighting Co.* v. *Public Service Commission* (1920), 190 Ind. 253, 267, 129 N. E. 13.

A perusal of the provisions of the Public Service Commission Act by this court in conjunction with §54-444, Burns' 1959 Supplement, apparently leads us to the conclusion that the Commission possesses no power, statutory or otherwise, to grant a new trial in the same sense as is commonly understood as authorized by a court in a civil action at law. We are further of the opinion that the Order of the Commission, dated March 5, 1957, can only be interpreted as authorizing a rehearing at a time to be determined to consider additional evidence so as to conclude whether or not the Order of January 11, 1957 should be supplanted and superseded by a subsequent order of the Commission.

The commission, in order to avoid different interpretations of its Order of March 5, 1957 formulated and executed its Order of March 19, 1957, thereby clarifying said former Order and removing any ambiguities that may be asserted by virtue of the March 5, 1957 Order; that said March 19, 1957 Order supplanted and superseded the former order of March 5th, which order thus was abrogated, null, void and of no further legal effect. 19 Am. Jur., Equity, §417, p. 287; *Ricker* v. *Powell* (1879), 100 U. S. 104, 25 L. Ed.

527. Having heretofore found that the March 5, 1957 Order of the Commission was supplanted and superseded by the Order of March 19, 1957, we shall address ourselves first to the last paragraph of said order, to-wit:

"It is further ordered that the order entered in this cause on January 11, 1957, continue in effect pending said rehearing."

The 1957 rates established by the Order of the Commission, dated January 11, 1957, became the legal and effective rates when filed with the Commission. Said rates were approved when the schedule of rates was filed January 16, 1957 and when the revised schedule, including rates, was filed and approved in October 1957. Thus the 1957 legal and effective rates which appellant must charge and collect from its subscribers on or after February 1, 1957, must remain and be the recognized legal and effective rates until such time that an administrative order of the Commission as a result of a legal and lawful public hearing supported by evidence was formulated and rendered. O. A. G., 1925-26 (Feb. 19, 1925), p. 468; §54-319, Burns' 1951 Replacement; *Tonopah S. & D. Co.* v. *Nye County* (1927), 50 Nev. 173, 254 P. 696; *State ex rel* v. *Public Service Commission* (1927), 317 Mo. 724, 296 S. W. 998, 1001.

Appellant further contends that the Order of the Commission, dated March 19, 1957, which amended the March 5th Order contained no findings to the effect that the rates set in the Order of January 11, 1957 were unreasonable and excessive, or that the supplanted rates of 1947 were reasonable, just and adequate, but it did order the 1957 rates be continued in force and effect subject to the rehearing as formerly stated.

The rehearing commenced on September 30, 1957,

pursuant to notice thereof. At the rehearing, evidence was first presented by various parties objecting to the original order. Thereafter, appellant introduced evidence which was substantially the same type of evidence and testimony which it had introduced at the original hearing. Part of this evidence was the testimony and exhibits of an engineer showing the current cost of appellant's property as of August 1, 1957, which the appellant presented on the third day of the rehearing. The Public Counsellor objected to the admission into the evidence of two exhibits for the reason that appellant had made no separation of its toll property from its local exchange property. At this point, it should be noted that substantially the same exhibits and evidence that was objected to at the rehearing was presented by appellant at the original hearing and was admitted and received by the Commission without objection. The Commission overruled the objection to this evidence at the rehearing but stated:

"However, the Commission, with reference to its ruling on Carter Exhibits 2-R and 5-R, will make a statement for the record: First, the Commission has jurisdiction and proposes to assume jurisdiction over the intrastate toll rates and local service rates of this Telephone Company and all telephone companies operating in the State of Indiana. Second, the evidence presented thus far in this proceeding by the Petitioner has been limited to local service rates as the sole remedy to secure the rate relief sought by the Petitioner in this cause. Third, the Petitioner has introduced evidence in its operating statements, and Counsel for Petitioner has advised that additional operating statements will be introduced, which include the revenues separated between intrastate toll rates and local service rates. Fourth, that such operating statements as introduced thus far have not separated the expenses as applicable to the producing of intrastate toll revenues and local service revenues. Fifth, telephone

plant in service used and useful, reflected in terms of original cost or in terms of current costs, as shown in Carter Exhibit 2-R, Page A, has not been separated for that portion of the telephone plant, in units or in dollars—in dollar amounts, that is— devoted to: (a) intrastate toll service and (b) local service.

"The Commission would admonish Counsel for the Petitioner that, in order for the Commission to fairly arrive at a rate of return for the Petition-er, some evidence covering the above matters should be presented in this hearing."

Appellant then presented a witness whose qualifications as an expert were unquestioned who testified in substance that in order for appellant to separate its toll property, revenues and expenses from its exchange property, revenues and expenses, a study would be required which would take approximately one year to complete and which would cost appellant between Sixty-five Thousand ($65,000.00) Dollars and Seventy-five Thousand ($75,000.00) Dollars.

On November 8, 1957, attorney for appellant submitted a motion to the Commission as follows:

"I now, therefore, respectfully move the Commission to withdraw the admonition to counsel for Petitioner in respect to testimony on separations between exchange and toll property, revenues and expenses, or in the alternative to continue this cause for a period of one year to give Petitioner time to make such a study and authorize the expenditure of approximately $75,000 to make that study.

This motion of appellant was overruled by the Commission.

By the order of January 24, 1958, the Commission rescinded its order of January 11, 1957, and reimposed the 1947 rates retroactively, and further ordered the

appellant to refund the difference to its customers. As heretofore stated, this January 24, 1958 order is the subject of this appeal.

Appellant contends that the Public Service Commission Act does not require the Commission to fix and determine local exchange rates only upon evidence separating local exchange and toll property, revenues, and expenses; that in fixing the 1957 rates and finding them to be reasonable and not excessive, the Commission took into account all property, all earnings, and all expenses, without separation, and fixed rates which would be necessary, over-all, to produce a fair return on the fair value of the property; that the appellant herein is not subject to the jurisdiction of any regulatory commission, except the Indiana Commission, and therefore separation is not required because it is not necessary in order to recognize the "competent governmental authority in each field of regulation."

The appellant insists that by its Order of January 24, 1958, the Commission singled out this appellant company and decided it must produce evidence separating its toll and exchange property, revenues, and expenses in order to show that rates already approved by the Commission and legally in effect are reasonable when attacked by its customers, whether or not such attack is supported by evidence, and by so doing denied the appellant the Equal Protection of the Laws Clause of the Fourteenth Amendment to the Constitution of the United States which requires that all in the same class must be treated alike; that to cast upon this appellant burdens not cast upon all other independent telephone companies is to deny to this company equal protection of the law and equal justice under the law.

The appellant urges that when the Commission overruled the appellant's motion to either (a) withdraw its

admonition to present a separation study, or (b) in the alternative, continue the hearing to give appellant time to make a separation study, that the Commission denied the appellant any opportunity to produce the very evidence which the Commission said was essential; that the Commission did not act as "an impartial fact finding body" which the Commission is supposed to be under the Acts of 1941, §54-112, Burns' 1951 Replacement, and the appellant was denied a full, fair and adequate hearing.

The Commission in refusing to withdraw its admonition to the appellant to present a separation study, or in the alternative, to grant a continuance of the hearing in order to give appellant time to make a separation study appears to be in error and this court is of the opinion that the offer by the appellant to make a separation study, provided an extension of time and permission to expend funds for that purpose were granted, should have been approved. The failure of said Commission to extend to appellant a reasonable time and authorize a reasonable expenditure for the purpose of a separation study was erroneous, thereby denying appellant "a full, fair, and adequate hearing," and said action was contrary to law.

Appropos to this opinion we set forth in part §54-112, Burns' 1951 Replacement, dealing with the Public Service Commission, to-wit:

"54-112. Duty of commission—Hearings— Authority of commission.—The commission created by this act [§§54-102, 54-109-54-120] shall in all controversial proceedings heard by it be an *impartial fact-finding body* and shall make its orders in such cases upon the facts impartially found by it. The commission shall in no such proceeding, during the hearing, act in the role either of a *proponent or opponent on any issue* to be decided by it. All evi-

dence given in any such proceeding shall be offered on behalf of the respective parties to, or appearing in, the proceeding and not in the name or behalf of the commision itself. . . ." (Our emphasis).

Further, §54-423, Burns' 1951 Replacement, under the heading "Unjust rates—Orders—" provides:

"Whenever, upon an investigation, the commission shall find any rates, tolls, charges, schedules, or joint rate or rates, *to be unjust, unreasonable, insufficient,* or *unjustly discriminatory,* or *to be preferential* or otherwise in violation of any of the provisions of this act, the commission shall determine, and by order fix just and reasonable rates, tolls, charges, schedules or joint rates to be imposed, observed and followed in the future in lieu of those found to be unjust, unreasonable, insufficient or unjustly discriminatory or preferential or otherwise in violation of any of the provisions of this act." (Our emphasis).

Under the heading "Rates varying from schedule unlawful.—" Burns' 1951 Replacement, §54-319, is as follows:

"It shall be unlawful for any public utility to charge, demand, collect or receive a greater or less compensation for any service performed by it within the state, or for any service in connection therewith, than is specified in such printed schedules, including schedules of joint rates, as may at the time be in force, or to demand, collect or receive any rates, tolls or charges not specified in such schedule. *The rates, tolls and charges named therein shall be the lawful rates, tolls and charges unless the same are changed as provided in this act."* (Our emphasis).

The three sections or parts thereof of Burns' 1951 Replacement, quoted above assume importance in this opinion. In our conclusion, heretofore drawn, to the effect, that the Order of the Public Service Commission

of March 19, 1957 was a valid order, until such time that it may be legally modified by the Commission, necessitates the reiteration of the said Paragraph 3 thereof, to-wit:

"3. That the order entered into in this cause on January 11, 1957, continue in effect pending such rehearing and further order of this Commission."

Thus the 1957 rates were tentatively in full force and effect until legally changed or modified by the Commission.

The Commission, as prescribed by Burns' §54-423, *supra,* made no special findings that the so-called 1957 rates were "unjust, unreasonable, and excessive," in its attempt to rescind its order of January 11, 1957, by its order of January 24, 1958; that said Commission made no findings that the 1947 rates and charges were "reasonable, just and not excessive," in its attempt to reimpose the 1947 rates and tariffs in lieu of the 1957 rates by its order of January 24, 1958.

The Commission by Burns' §54-112, *supra,* heretofore quoted, is charged as a fact finding body, impartial in its functioning, by being neither a *"proponent or opponent on any issue decided."* (Our emphasis.) Thus in the purported failure of the Commission to follow the law as set forth in the statutes, the legal rates as established by the Order of January 11, 1957, and substantially reaffirmed on March 19, 1957, remain in full force and effect notwithstanding the purported order of the Commission on January 24, 1958.

By assuming the Order of January 24, 1958 null, void, and of no effect in attempting to set aside the rates formulated by its Order of January 11, 1957, subsequently approved in part on January 16, 1957 and fully approved October 11, 1957, there remains for

consideration the interim period of time since the 1957 rates became effective as to what the correct rates should be, until the legal rates are fully formulated by an order based upon a legal rehearing to establish legal and effective rates. The Order of the Commission on January 24, 1958, was to the effect that the Order of January 11, 1957, be canceled as of February 1, 1957, and all monies collected by the Order of January 11, 1957, in excess of the rates and charges under the 1947 rates be refunded to the affected rate payers within one hundred eighty days.

We obviously assume that the Public Service Commission in its Order of January 24, 1958, acted within what it assumed its discretion. It attempted, not only to set up a new schedule of rates as of January 24, 1958, but nullified any increase of rates after February 1, 1957.

Of first paramount importance is the consideration as to whether the Public Service Commission possesses the authority to issue any orders, the effect of which carries a retroactive feature.

Appellant contends that inasmuch as the Commission's Order of January 11, 1957, establishing the 1957 rates, was conditional upon appellant making expensive and costly improvements to certain of its facilities, and which improvements were timely made by appellant in a sum of approximately one million dollars, the Order of January 24, 1958, revoking and rescinding retroactively the rate provision of January 11, 1957 was prejudicial to appellant's cause, in this that among other things, no consideration was given in said rescinding order respecting the company's outlay of the expenditure of more than one million dollars for improvements demanded by the Commission.

Appellant in his argument says:

"Retroactive orders like retroactive statutes are inherently unfair and unjust."

Besides appellant cites §54-423 Burns', *supra,* to the effect that the Commission was authorized to determine legal rates "to be imposed, observed, and followed in the future." *Niklaus et al.* v. *Conkling* (Elliot, C. J., 1888), 118 Ind. 289, 20 N. E. 797; *Public Utilities Comm'n* v. *Gas Co.* (1943), 317 U. S. 456, 87 L. Ed. 396; *Georgia & c. Comm.* v. *Atlanta & c. Co.* (1949), 205 Ga. 863, 55 S. E. 2d 618; *Arizona Grocery Co.* v. *Atchison Ry.* (1932), 284 U. S. 370, 76 L. Ed. 348 and others.

Appellant alleged that *General Tel. Co.* v. *Pub. Serv. Comm.* (1954), 341 Mich. 620, 67 N. W. 2d 882, holds that inadequate rates in the past cannot be remedied by a retroactive order, and as a corollary thereto, excessive rates in the past cannot be remedied by a retroactive order.

The record, in the case at bar, discloses that on January 31, 1957, rate payers designated as "Taxpayers' League of Madison" filed a "petition for a rehearing," protesting the Commission's Order of January 11, 1957, which Order became effective February 1, 1957. Hence, the order itself was attacked and petitioners requested permission to present evidence attacking the rates promulgated by said Order. The Commission, on May 19, 1957, in its Order, prescribed that rates established January 11, 1957 be continued pending a rehearing.

The importance ascribed to the term "Rehearing" in this cause justifies quoting of appropriate statute to-wit:

Section 54-444 in the Cumulative Pocket Supplement Burns' Annotated Indiana Statutes reads as follows:

"54-444.  Petition for rehearing—Effect on appeal.—If a petition for rehearing is filed with the commission by any party to the proceedings before the commission, within the time allowed by the rules of the commission, and prior to the filing of the commission record with the clerk of the Supreme and Appellate Courts, the right to appeal to the Appellate Court as herein provided shall terminate thirty (30) days after the determination by the commission of such petition for rehearing. The appeal shall not be submitted prior to that determination of the petition for rehearing, and the decision of the commission on said petition shall not be assigned as error unless the final decision, ruling or order of the commission is modified or amended thereby, without further hearing ordered. (Acts 1957, ch. 189 §2, p. 395.)"

Section 12 of Chapter 189, Page 400 of the Acts of 1957 relating to the Public Service Commission is in this language, to-wit:

"SEC. 12.  This act shall not affect actions or proceedings now pending in the circuit, superior, Appellate or Supreme Courts of this state, heretofore commenced under the provisions of any of the laws or parts of laws herein repealed; and the same may be prosecuted, defended and appealed with the same effect and in the same manner as though this act had not been passed."

The petition for rehearing in the case at bar was filed January 31, 1957. Said Acts of 1957, Chapter 189, became effective March 12, 1957. Inasmuch as of the effective date of said Act, no proceedings in the case at bar were pending in a circuit, superior, Appellate or Supreme Court; hence, within the provisions of said Section 12, quoted above, no impediment prevented the

application of any provisions of said Chapter 189 of the 1957 Acts, that may be applicable in the case at bar.

It further appears that the Commission during the pending litigation on the petition for rehearing, and as set out in the controversial Order of January 24, 1958, considered the January 11, 1957 rates as subject to correction rather than fixed, fully determined, and to be irrevocably controlling, subject only to any modification evidenced by a valid Order of the Commission, based on sufficient evidence, at a legal hearing requested in an original petition seeking a modification or change of rates. This position of the Public Service Commission, we hold to be untenable.

The record shows that a rehearing was held at which appellees presented evidence attacking the January 11, 1957 Order and the rates thereby established. The rehearing resulted in the January 24, 1958 Order, which for the reasons heretofore stated, if for no other, is null and void.

The statute, Burns' 54-423, quoted herein above, provides that whenever the Commission shall find any rates, tolls, etc. to be unjust, unreasonable, insufficient, etc., the Commission shall determine and by order fix just and reasonable rates etc., to be "imposed, observed and followed *in the future* in lieu of those found to be unjust, unreasonable . . . ." (Our emphasis.)

We find nothing in the statute giving the Commission the power to cancel, or to fix, rates retroactively. The statute provides the Commission with the power to fix rates *for the future* if it finds the rates in effect to be unreasonable or unjust; but we look in vain to find statutory authority for the Commission to fix rates *for the past*. The Commission has no powers except those conferred by statute. *Chicago & E. I. R.*

*Co.* v. *Public Service Comm.* (1943), 221 Ind. 592, 49 N. E. 2d 341; *New York Central R. Co.* v. *Public Service Com.* (1922), 191 Ind. 627, 134 N. E. 282.

We are satisfied that no utility could attract capital for expansion or replacement of its property and facilities, or for any other purpose, if the Commission could at one time fix rates for that utility and then at some later time rescind those rates retroactively, fix lower rates retroactively and require the difference to be refunded to the ratepayers. The law of Indiana was not designed or intended to create chaotic conditions in the market where utilities, as well as other businesses go to obtain capital for their legitimate business purposes.

It is therefore our opinion that the rates established by virtue of the January 11, 1957 Order of the Commission are the legal, effective and only rates which appellant has had the right to charge and collect since the effective date of those rates in the various exchanges as shown in its tariff filed on January 16, 1957; and that those rates will remain the legal, effective and only rates which appellant may charge until the Commission finds from evidence submitted that those rates are unreasonable and unjust and fixes new rates to be charged in the future which are reasonable and just.

The Commission's Order in its Cause No. 26794, dated, entered, and approved January 24, 1958, is hereby reversed, vacated and set aside; the enforcement of said Order is permanently enjoined; and the cause is remanded to the Commission with instructions to reopen said rehearing and permit further proceedings in said Cause No. 26794 by hearing evidence supplemental to the evidence already before the Commission in said cause that may be appropriate.

The Commission is further directed, based upon the evidence now before the Commission in said cause, and the supplemental evidenced adduced, if any, by virtue of a continuation of said rehearing as above ordered, to render findings and order thereon as provided by statute.

The Order of the Public Service Commission of January 24, 1958, is hereby reversed, and said cause is remanded with instructions as heretofore set out and specified.

This Court, by a majority of the judges thereof, exercised its discretion as authorized by §4-202 Burns' Annotated Indiana Pocket Supplement 1960, to sit in Banc in the consideration and opinion in this appeal.

Cooper, Kelley, and Ryan, JJ., concur.

Myers, J., dissents with opinion and Gonas, J. concurs.

Ax, C. J. and Smith, P. J. not participating.

### DISSENTING OPINION

MYERS, J.—I dissent from the opinion of the majority of the members of this court participating in this cause, and submit the following opinion as the reasons therefor.

This is an appeal pursuant to statute from an order of the Public Service Commission of Indiana entered on January 24, 1958, in a proceeding originally commenced before the Commission by appellant, Indiana Telephone Corporation, wherein it petitioned for authority to increase its telephone rates and charges.

Appellant is an Indiana corporation, with its main business office in the City of Seymour, Indiana. It owned and operated in the southern part of the State of Indiana intrastate telephone property consisting of

43 exchanges, with approximately 33,862 subscriber stations, and a telephone toll system serving its subscribers and the public generally. The toll system connected most of appellant's exchanges and interconnected with other telephone companies doing business in the State of Indiana. It was an independent company and not a part of any other telephone system.

On July 17, 1956, appellant filed its verified petition with the Commission wherein it stated that it had received its last general rate increase in 1947, and that these rates and charges did not provide sufficient revenue to pay operating expenses and a fair return on the fair value of its property. It asked for an order by the Commission granting new rates, charges and tariffs.

There was a public hearing before the Commission which commenced on September 26, 1956. At the conclusion of the hearing dates were fixed for field hearings in the cities of Madison, Scottsburg and Jasper, Indiana, on petitions and supplemental petitions filed by subscribers to appellant's telephone system in Dubois and Scott counties, and by the Taxpayers' League of Madison, Indiana. Public field hearings were held by the Commission in each of those cities.

On January 11, 1957, the Commission entered an order in which it summarized the evidence heard and the exhibits entered in the hearings and specifically found that the existing rates and charges of the appellant were not sufficient to provide a fair return of and on the fair value of the property of appellant used and useful in rendering telephone service, and that such rates and charges should be increased so as to produce additional net income annually in the amount of $353,500. Because of the burden of federal and state tax on income, the Commission found that the amount of the increase in gross operating revenue required to

produce the stated net amount would be $744,000. It further authorized certain improvements, replacements and additions, finding, however, that service being rendered was "reasonably adequate." The rate increase was ordered in accordance with the findings, and appellant was directed to file its study of its present rates and proposed rates and charges, and upon approval thereof to file a complete schedule calculated to produce the increased revenue with the Tariff Department of the Commission.

On January 15, 1957, the appellant filed with the Accounting Department of the Commission a study of proposed rates and charges. The study was approved, and on January 16, 1957, a schedule of rates and charges for local exchange service and miscellaneous service was filed with the Tariff Department. The rates and charges were to become effective February 1, 1957, subject to certain exceptions which were set forth in the order.

On January 31, 1957, the Taxpayers' League of Madison filed with the Commission a petition for rehearing wherein it was stated that the League was composed of more than ten subscribers of appellant's telephone service in Madison; that the rates which were to be placed in effect in Madison and two other cities were unfair as being excessive and were approved without evidence as to reasonableness and justice of the rates applicable to those subscribers; that the Commission took into consideration factors which were improper, unlawful and unjust and fixed the increase in rates by including such factors.

Appellant filed an answer to this petition on February 11, 1957, wherein it denied those charges. Oral argument was held by the Commission on the petition for rehearing on February 15, 1957.

On March 5, 1957, the Commission issued an order in which it granted the petition for rehearing as prayed, after finding that it was in the best interest of the public for the Commission to hear additional evidence, and that the petition should be approved and a rehearing instituted.

On March 19, 1957, the Commission issued an amended order finding that the order of March 5, 1957, "is or may be ambiguous and not clear as to its intent and meaning." It deleted the findings and order therein and substituted therefor the following order:

"The Commission having heard the arguments of counsel and having examined the exhibits and file of the Commission and being duly advised in the premises now finds:

"1. That it is to the best interest of the public that the Commission hear additional evidence in said cause covering the increase of rates and charges for all of the exchanges owned and operated by Indiana Telephone Corporation.

"2. That a rehearing of said case should be instituted covering all matters contained in the order of the Commission in this cause and dated January 11, 1957.

"3. That the order entered into in this cause on January 11, 1957, continue in effect pending said rehearing and further order of the Commission.

"It Is Therefore Ordered by the Public Service Commission of Indiana that Cause No. 26794 be opened for rehearing on all matters contained in the order of this Commission in said cause and dated January 11, 1957.

"It Is Further Ordered that a date be fixed for said hearing and that notice be given as provided by law.

"It Is Further Ordered that the Order entered in this cause on January 11, 1957, continue in effect pending said rehearing."

The rehearing commenced on September 30, 1957. A motion to dismiss for lack of jurisdiction which had been filed by appellant was overruled, and thereafter the cause was submitted and evidence was heard.

On January 24, 1958, the Commission entered its finding and order. In part, this order was explanatory of the action which the Commission finally took. In brief, the Commission stated that there were two major types of telephone service with which it was concerned in the proceedings. One type was local exchange service and the other type was message toll telephone service. The latter was divided into two classes, namely, (1) intrastate message toll and (2) interstate message toll service. The intrastate toll service and local exchange service fall within the jurisdiction of the Commission, while the interstate toll service is nationwide in scope and the rates charged are fixed by the Federal Communications Commission. The order went on to say that there had been testimony regarding the toll service, both interstate and intrastate, and the revenues derived therefrom. The evidence showed that there had been a proportionate increase in both toll and service calls. The Commission further stated that in order to fix rates there would have to be sufficient information detailed to enable the Commission to determine, first, the cost of service related to the property under its jurisdiction, and, second, the cost of service rendered to the two broad classes of intrastate service, namely, local exchange and message toll. The Commission went on to say that it could not determine the reasonableness of the proposed rates without pertinent information before it to determine the cost and value of this service. It stated as follows:

"To determine whether rates charged are too high for the service rendered or whether they are

unfair, unreasonable and unjustly discriminatory is an impossible task on the basis of the information introduced into the record, since to do so requires the allocation of plant and expenses to the various services.

"The Company must show and justify the various items of costs and the return on the property upon the various classes of service."

The order then proceeded to relate that during the rehearing proceedings counsel for appellant were admonished to present evidence regarding revenues, expenses and property which were to be separated between intrastate toll rates and local service rates in order for the Commission to fairly arrive at a rate of return. The reason for giving this admonition, according to the Commission's statement made at the time, was that appellant's evidence had been limited to local service rates as the sole basis on which to secure rate relief.

Appellant's counsel moved the Commission to withdraw this admonition, or, in the alternative, to continue the case for a period of one year in order to allow appellant time within which to make a separation study and to authorize the expenditure of $75,000 for that purpose. This motion was overruled on the ground that appellant had been given ample opportunity to present evidence to the Commission regarding rates and charges.

The Commission's specific findings, in part, read as follows:

"5. That the schedule of rates filed reflecting the increases in revenue applied generally only to local service rates with no change in intrastate message rates.

"6. That testimony introduced in both proceedings is not sufficient for the Commission to determine the proportion contributed to over-all earn-

ings by the three major classifications of service: (1) local exchange service, (2) intrastate message service, and (3) interstate message service. In its presentation the Company alluded to certain increases in interstate revenues and brought forth certain testimony as regards to methods, cost and length of time required to make an allocation study of revenues, expenses and plant.

"7. That the property actually used and useful for the convenience of the public in its intrastate operations in the State of Indiana cannot be determined from testimony presented before the Commission. Nor can the appropriate expenses for rendering such services be determined.

"8. That the testimony adduced is not sufficient for the Commission to determine whether the rates filed are properly applicable to the cost of service for intrastate message service and local exchange service.

"9. The Indiana Telephone Corporation has not borne the burden of proof required of it in that it has failed to provide proper and adequate information to allow the determination of the reasonableness of the rates now being charged by the Company. The Company's general books or records cannot enable the Commission staff nor the Commission to determine plant, nor expenses related to interstate services. The Company did not introduce any testimony nor exhibits to assist the Commission in the determination of the just and reasonable rates for intrastate local exchange service and toll service.

"10. The Commission finds lacking such information and finds that it cannot approve the tariff sheets and rates stated therein (now on file with this Commission and being charged) and that they should be cancelled and stricken from the files of the Commission and that the previous rate schedules and rates in effect, to-wit, Supplement No. 1 to P. S. C. I. No. T-12, issued January 23, 1950 and Supplement No. 2 to P. S. C. I. No. T-11, issued April 22, 1952, are the only proper and legal rates the Commission can approve and enforce at this time, and that P. S. C. I. No. T-13, Part II, Section

1, Sheets 1 through 6, inclusive, are hereby can-celled."

In accordance therewith, the following order, in part, was entered:

"1.   That the order of this Commission in the above cause dated January 11, 1957, is hereby spe-cifically cancelled.

"2.   That P. S. C. I. No. T-13, Part II, Section 1, Sheets 1 through 6, inclusive, be and the same are hereby cancelled as of February 1, 1957 because of insufficient evidence to support the same.

"3.   That in lieu thereof, Supplement No. 1 to P. S. C. I. No. T-12 and Supplement No. 2 to P. S. C. I. No. T-11 are reinstituted, effective as of February 1, 1957.

"4.   That all monies collected under P. S. C. I. No. T-13, Part II, Section 1, Sheets 1 through 6, in-clusive, are hereby declared to have been illegally collected, and the difference between the monies collected under P. S. C. I. No. T-13, Part II, Sec-tion 1, Sheets 1 through 6, inclusive, and Supple-ment No. 1 to P. S. C. I. No. T-12 and Supplement No. 2 to P. S. C. I. No. T-11, are hereby ordered refunded to the affected ratepayers, and the Indi-ana Telephone Corporation is granted 180 days from the date of this order to effect such refund."

Appellant duly filed its notice of appeal, praecipe, and request for the record. The assignment of error is that the decision, ruling and order of the Commission dated January 24, 1958, is contrary to law.

The basis of appellant's argument is that the rates placed in effect as a result of the January 11, 1957, order, and which were subsequently ordered to remain in effect pending the rehearing, were then and are now the legal rates binding upon the Commission and all parties concerned, for the reason that they were never validly or legally set aside by the order of January 24, 1958. It is claimed that this last order

was an illegal attempt by the Commission to cancel the 1957 rates without following the procedure required by statute, in that the rehearing was "the same as" a new and independent proceeding by appellees where the burden was upon them to prove that either the 1947 rates were just and reasonable or that the 1957 rates were arbitrary, unjust and unreasonable, neither of which was done; that the Commission made no findings supported by evidence that the 1957 rates were unjust and unreasonable; that as the Commission failed to fix and prescribe rates which were just and reasonable, the 1957 rates must remain in effect and the order of cancellation is void and invalid.

Appellant further charges that the order of refund is retroactive, and that the Commission had no legal authority or power to make it; that a separation study is not and never has been required by the Commission in considering a rate increase of this nature; that if such separation study was necessary, it was incumbent upon appellees to supply it; that the order violated the due process clause and the equal protection clause of the Constitutions of the United States and the State of Indiana.

Appellees argue that the petition for rehearing is in the nature of a motion for new trial which may be filed in an ordinary lawsuit, and which if granted vacates the judgment entirely as to all parties; that accordingly, at the time the Commission granted the rehearing, the 1957 order was completely vacated, leaving appellant with the burden of proceeding anew on his original petition; that the March 5, 1957, order granting the rehearing, vacated the January 11, 1957, order, leaving the 1947 rates in effect as if they had never been changed; that the March 19, 1957, order

was invalid and void as it attempted to set rates without notice, hearing or other requirements of the statute.

Appellees further contend that appellant failed to meet the burden of proof showing the necessity for an increase in rates because of failure to provide a separation study as required by the Commission in the rehearing proceedings; that the 1947 rates therefore remained and are in effect, never having been legally set aside.

The most important factor in this case concerns the nature and effect of the rehearing which was granted, took place, and was determined by the order of January 24, 1958.

The Public Service Commission of Indiana derives its power solely from the statutes which created it, and its authority to act must be found in the provisions thereof. Section 54-102 *et seq.*, Burns' 1951 Repl.; 24 I. L. E., §12, page 36.

The statutes do not specifically provide for a petition for rehearing in matters before the Commission. However, at the time the circumstances took place in this case, such a petition was recognized in the sections dealing with actions to vacate or set aside an order of the Commission. There it was stated that such an action should be commenced within sixty days from the entry of the order in a circuit or superior court, "Provided, That if a rehearing by the commission has been petitioned for, the right to commence such action . . . shall terminate thirty (30) days after the determination by the commission of such petition for rehearing: . . . ." Section 54-430, Burns' 1951 Repl. This section was amended by the General Assembly in 1957 wherein a direct appeal to the Appellate Court of Indiana was provided instead of proceeding first in the circuit or superior court. However, the new section carried with

it the same proviso about petitions for rehearing. Section 54-444, Burns' 1951 Repl. (Supp.).

Rule XX of the Rules and Regulations Concerning Practice and Procedure Before the Public Service Commission specifically states that after the entry of an order of the Commission a petition for rehearing may be filed, setting forth the requirements and form of the petition. The rule calls attention to appropriate sections of the Public Service Commission Act as well as the Railway Act and Motor Vehicles Act, with respect to petitions for rehearing. Sections 54-203, 54-430, 55-112, Burns' 1951 Repl., §§47-1215, 47-1249, Burns' 1952 Repl.

Thus, it appears that petitions for rehearing are an integral part of the Commission's procedure. There being nothing more specific in the statutes or rules concerning the nature and legal effect of a petition for rehearing and the granting thereof, we must turn to general principles of law in regard thereto.

Appellant takes the view that such petitions come from the old equity practice under which a motion for new trial was unknown, and the only way in which a decree could be challenged in the court below was by bill of review. Under such equity practice, the granting of such a bill, or "petition for rehearing," did not *per se* vacate the original decree, but opened it for correction, alteration or *reversal. Lockwood* v. *Bates* (1833), 1 Del. Ch. 435, 12 Am. Dec. 121.

Appellees claim that such a petition is equal to the filing of a motion for new trial in a suit at law, the granting of which appellant admits sets aside the findings and judgment completely, letting the case stand for a new trial as if no proceedings had taken place. *Strong* v. *Knox* (1914), 182 Ind. 278, 105 N. E. 776;

*State ex rel. Downard, Administrator* v. *Templin et al.* (1890), 122 Ind. 235, 23 N. E. 697.

Although there is a similarity between these procedures and the petition for rehearing in this case, we do not believe either contention to be correct. As to the bill of review, we must remember that the distinction between law and equity practice and procedure has been abolished in this state. Provision is made by statute for the review by a trial court of a judgment, whether it involves equity or law matters. Section 2-2604, Burns' 1946 Replacement. It is derived from the old equity practice embodying substantially the ordinances in chancery of Lord Chancellor Bacon. *Ross et al.* v. *Banta* (1895), 140 Ind. 120, 34 N. E. 865, 39 N. E. 732. Today, any action to review a judgment is specifically governed by the terms of this statute.

In regard to appellees' comparison of the petition for rehearing with a motion for new trial, we find likewise that the pleading and grounds for a motion for new trial are prescribed by statute and by Supreme Court Rule 2-6. Sections 2-2401, 2-2406, Burns' 1946 Repl. These provisions must be strictly followed in trials before the court. The statute is for the purpose of giving to the trial court an opportunity to correct any irregularity in the proceedings or any abuse of discretion by which a party was prevented from having a fair trial. *Ferguson* v. *Ramsey* (1873), 41 Ind. 511. The specific irregularities and errors alleged must be set out in the motion. If the motion is overruled it may be assigned as error on appeal. If the motion is sustained and a new trial is granted, the judgment rendered is vacated as to all parties. *Strong* v. *Knox, supra.*

The petition for rehearing authorized herein is not subject to the rigid requirements and legal effect of a motion for new trial. This case involves a public ad-

ministrative tribunal. The manner in which a question is presented to it and finally decided by it is largely determined by the Commission itself and formality is not required or observed. 24 I. L. E., §41, page 53; *In re Northwestern Indiana Tel. Co.* (1930), 201 Ind. 667, 171 N. E. 65.

It has been stated that administrative agencies have inherent or implied power, comparable to that possessed by courts, to rehear or reopen a cause and reconsider its action or determination therein. 73 C.J.S., §156 a., p. 488. It is customary to make application for rehearing.

"In passing on an application for a rehearing, the permissible affirmative action of the agency or officer is limited to the grant or denial of the application. If the rehearing is denied, the order or decision to which the application was addressed becomes final; but, if the application is granted, a rehearing or retrial must be held; and, while it has been held that the granting of a rehearing vacates the previous determination, it has also been held that the original order or decision cannot be abrogated, changed, or modified until after such rehearing and as a result thereof. On an application or petition for rehearing, the administrative agency may, under provisions to that effect, order a hearing de novo and permit other parties to intervene." 73 C.J.S., §156 d., p. 492.

"On rehearing and reconsideration of a matter an administrative agency may set aside its prior order and enter another order provided no prejudice is thereby shown; and it has been held that an administrative body, like a court, may and should change its order if on rehearing it is of a different mind." 73 C.J.S., §156 e., p. 493.

"Thus, it has been held that, except as qualified by statute, administrative tribunals possess the inherent power to modify their judicial acts to serve the ends of essential justice and the policy of the law; and that the general power of an administrative body over its decisions includes the

right to modify a decision so as to reach a different result on the same record." 73 C.J.S., §157, p. 493.

"It has been held to be the duty of an administrative agency to correct its decision on discovering that it was illegal." 73 C.J.S., §157, p. 494.

More specifically, it has been held that Public Service Commissions may rehear and reconsider their determinations not only by reason of express statutory provisions, but by inference from statutory provisions. A Public Service Commission

"may be possessed of power, inherent from the nature of the functions it is required to perform to grant a rehearing of its decisions in appropriate cases. The purpose of a rehearing is to give the commission an opportunity to rectify any mistake made by it; and under some statutes application for a rehearing is a condition precedent to a judicial review of the order of the commission, . . . Whether or not a rehearing should be granted is a matter within the discretion of the commission, provided such discretion is not abused . . . it has been held to constitute error to refuse to grant a rehearing where the order of the commission is based on *findings of fact which are not supported by evidence. . . .*" 73 C. J. S., §61, p. 1140. (Our emphasis.)

"*At the new hearing,* where an unrestricted rehearing has been granted, the whole proceeding is reopened and is to be heard *as though no previous order had been entered.*" 73 C. J. S., §61, p. 1141. (Our emphasis.)

We believe these to be the principles of law governing the case at bar. The Commission was within its inherent or implied powers to grant a rehearing, and to hold a new hearing, on appellant's petition for increase in rates. At the time the new hearing commenced, the Commission was in a position to proceed as though the previous order of January 11, 1957, had never been entered.

What was the effect of the order of March 5, 1957, granting the rehearing? The general rule is stated as follows:

"In the absence of a statute otherwise providing, granting or allowing a rehearing does not suspend the operation of the order theretofore made by the commission, unless it specifically so directs. *The original order is not to be abrogated, changed or modified until after a rehearing is in fact had.*" 73 C. J. S., §61, p. 1141. (Our emphasis.)

This statement of the law seems to be in accord with the opinion of the Attorney General, cited by appellant, wherein it was said:

"The legislature recognizes another method of attacking orders of the Commission, viz., by filing a petition for rehearing, although no specific provisions are found in the act for rehearing and there is an absence of provision as to the effect of the filing of a petition for rehearing or of the granting thereof on an order of the Commission. So far as the intent of the legislature is indicated on this question, reasoning by analogy from what such intent is when the attack is in court, it seems that the intent would be that an order of the Commission would be in force until a different order were finally made when a rehearing has been consummated.

"Reasoning in another way, it seems clear that the granting of a rehearing does not amount to a confession that an order is erroneous or void but only affords an opportunity to show that in the end." Opinions Attorney General, 1925-1926, February 19, 1925, p. 468.

Thus, the revised order of March 19, 1957, entered by the Commission in an attempt to clarify the March 5th order, in so far as it determined to keep the 1957 rates in effect pending rehearing, was actually unnecessary and surplusage. The rates set in the January 11th

order remained as a matter of law the valid and legal rates until they were abrogated by the January 24, 1958, order following the rehearing. As was stated in the case of *State ex rel.* v. *Public Service Commission* (1927), 317 Mo. 724, 732, 296 S. W. 998, 1001:

"If such rates are found to be just and reasonable, the Commission is without jurisdiction to arbitrarily limit their existence. They remain the rates until changed by an order lawfully made *in this proceeding,* or in a new proceeding, before the Commission. . . ." (Our emphasis.)

The effect of the order of March 5, 1957, as amended by the order of March 19, 1957, in granting the rehearing, was to leave the rates established January 11, 1957, in force *pending the rehearing.* When the proceedings on rehearing took place, beginning on September 30, 1957, the effect was the same as if the matter was being heard *de novo* and there never had been a previous hearing or order. Contrary to appellant's contention, the issues were not entirely changed from the general principles enunciated above. This was not an independent or new proceeding. It was as if the appellant's application for a rate increase had come before the Commission *for the first time.* There was no need to determine whether the rates set by the 1957 order were unreasonable, excessive or inadequate. There was no need to make findings as to what rates and charges in lieu thereof would be reasonable, adequate and not excessive. The 1957 rates were not under attack. *The 1947 rates were attacked.* The issues were not changed in any respect, but remained the same as when appellant's application was first filed in July, 1957. When the Commission found as a result of the rehearing that the appellant had not submitted sufficient evidence upon which to base an increase in rates, the 1947 rates auto-

matically came back in effect. The result of the Commission's action was the same as the dismissal of a lawsuit for failure on the part of the plaintiff to present evidence sufficient to support the allegations of his complaint.

This disposes of most of appellant's other arguments for reversal. The burden of proof to show that the 1947 rates were inadequate and unreasonable remained with appellant. It did not shift to appellees upon rehearing. This is because of our previous interpretation of the nature of a rehearing. The Commission found that appellant did not sustain this burden of proof, principally because it had no evidence to present on separation of property, services and charges devoted to toll service and that devoted to exchange service. Appellant argues that such evidence has never been required by the Commission in determining rates of telephone companies not a part of the Bell system, and is not now required. However, this is a matter to be determined by the Commission in each particular case presented to it. This court has no power to instruct the Commission as to the type of evidence it shall or shall not require in a given case when in the performance of its statutory duties. The fact that a separation study never has been required previously in a telephone rate hearing before the Commission is no argument that it should not be required in this instance. This was a matter within the Commission's discretion. The record shows that there was evidence and testimony pertaining to this issue. We find the Commission did not abuse its discretion in demanding such a study.

The fact that the Commission overruled appellant's motion to withdraw the admonition to counsel regarding the separation study and refused to allow a con-

tinuance for one year within which to make such a study was not such an error as to require a reversal, nor did it deprive appellant of its constitutional rights. In overruling the motion, the Commission stated that appellant had had ample time and every opportunity to present evidence to the Commission relative to rates and charges. The record shows that between the first hearing and the rehearing there elapsed almost a year. Further, in its order of January 24, 1958, the Commission refers to the oral argument which was held before it on February 15, 1957, relative to the rehearing. The matter of separation was called to the attention of the Commission by one of the attorneys for the objectors, who stated that he felt that the separation of property devoted to toll service and that devoted to exchange service was a matter subject to inquiry. Thus, we cannot say that appellant was completely taken by surprise when the separation study was requested.

Appellant contends that the order of January 24, 1958, deprived it of its property without due process, not only because the 1947 rates were unreasonable, arbitrary and confiscatory, but also because the procedure followed by the Commission amounted to a denial of a fair hearing. As we have previously seen, the Commission stated that sufficient evidence was not presented to it at the rehearing to enable it to determine whether the 1947 rates were unreasonable and arbitrary. This left matters in *status quo,* with the 1947 rates coming into effect and remaining so thereafter. We have carefully looked at the record and we cannot find from the evidence set forth therein that the Commission acted in an arbitrary and capricious manner.

In the opinion of the Commission, appellant did not make a case at the rehearing. Having failed to do so, appellant cannot now claim that it was deprived of

its property without due process or that it was denied a fair hearing.

Appellant argues that the January 24, 1958, order impaired the obligation of its contracts with its customers in that the order illegally did away with the rates authorized by the 1957 order, all of which is claimed to be a violation of the Constitutions of the United States and of the State of Indiana. This argument is refuted by our interpretation of the nature and effect of the rehearing. The rates set by the 1957 order were conditional only. That order was always subject to the filing of a petition for rehearing within twenty days after its entry. (Rule XX of the Rules and Regulations of the Public Service Commission.) When the rehearing was granted, the 1957 rates remained in effect only until the final order on rehearing, which could modify, change or reverse entirely the previous order. The new order of January 24, 1958, voided and supplanted the 1957 order as if it had never existed. Thus, there was no contract between appellant and its customers, the obligation of which could be violated.

This brings us to the January 24, 1958, order requiring a refund of monies collected under the 1957 order in excess of the amounts due under the 1947 rates. The Commission made the order retroactive as of February 1, 1957, when the 1957 rates were placed in effect. In view of our interpretation of the law pertaining to the effect of the order granting the rehearing, this section of the order is void and of no effect.

For reasons heretofore set forth, we do not agree with appellee that the March 5, 1957, order granting the rehearing either (1) destroyed and wiped out the 1957 rates or (2) could not be altered or amended so as to allow collection of the 1957 rates pending rehearing. We have tried to point out that appellant was

entitled to collect the 1957 rates after the granting of rehearing and retain them as a matter of law, but only to January 24, 1958, at which time the 1947 rates automatically came back into force.

From January 24, 1958, appellant is subject to the provision of §54-448, Burns' 1951 Repl. (Supp.), wherein appellant on filing an appeal to this court may collect the rates it claims were validly authorized by the January 11, 1957, order, providing that if such rates are not sustained on appeal, it must refund the difference to its subscribers. After the 1958 order, appellant was well aware that there was a grave question concerning these rates. If it continued to collect them, it did so with full knowledge that they might not be sustained on appeal.

As a result, I would have sustained the order of the Commission dated January 24, 1958, in all respects except as to its ruling on payment of a refund retroactively from February 1, 1957, to January 25, 1958. Rather than to arbitrarily dispose of this case at this time, however, I would have taken advantage of the latitude and broad powers granted this court by the Act of 1957 wherein this court may affirm or set aside the order of the Commission in whole or in part or remand the proceeding to the Commission with instructions. Section 54-449, Burns' 1951 Repl. (Supp.).

I would have remanded this cause to the Public Service Commission, with instructions that new evidence could be received, if there were any; and that evidence of facts which were in existence at the time of the rehearing could be received, providing there were a showing to the Commission that such evidence was not available for presentation to the Commission prior to the entry of its final order on rehearing, and that due diligence was exercised by the party offering the same

to procure and present such evidence prior to the entry of final order on rehearing. If any additional evidence was to be taken, I would have instructed the Commission to file with this court any decision, findings or order made and entered by the Commission as a result thereof. If no such additional evidence was taken, and there are no further proceedings brought before the Commission, I would have required the same to be reported to this court, and would have disposed of this cause according to the terms of this opinion.

Gonas, J., concurs in dissent.

NOTE.—Reported in 171 N. E. 2d 111.